**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted February 21, 2007*
Decided February 23, 2007

Before

**Hon.** FRANK H. EASTERBROOK, Chief Judge

**Hon.** RICHARD A. POSNER, Circuit Judge

**Hon.** TERENCE T. EVANS, Circuit Judge

| | |
|---|---|
| No. 06-3377 | Appeal from the United States Tax Court. |
| SANKARSHAN ACHARYA and KALPANA ACHARYA, *Petitioners-Appellants*, | |
| *v.* | No. 9461-05 Mark V. Holmes, *Judge*. |
| COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee*. | |

**Order**

Sankarshan and Kalpana Acharya reported on their joint 2001 tax return a net loss of some $117,000 attributable to what they described as a business of buying and selling stock. They treated this loss as immediately deductible. After an audit, the IRS determined that Sankarshan's business is teaching finance at the University of Illinois at Chicago, while Kalpana's income came from a job as a bakery clerk rather than a stock brokerage. The IRS concluded that the Acharyas suffered short-term capital losses, which may be deducted only up to $3,000 annually. After a trial, the Tax Court agreed with this characterization and ordered the Acharyas to pay about $14,511. The court rejected their argument that the stock-trading losses entitled the couple to a sizeable refund. The court rejected the Commissioner's proposal

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. See Fed. R. App. P. 34(a); Cir. R. 34(f).

to add a negligence penalty, observing that Sankarshan had approached the matter as an economist would do rather than as the Internal Revenue Code requires.

The Acharyas' principal argument in this court is that the Tax Court, having characterized their trading as a legitimate business, was obliged to recognize the full deduction they claimed. The question is not, however, whether a given activity is "legitimate." It is how the Internal Revenue Code treats the income and losses of that activity. One rule is that gains and losses from trading securities are treated as "capital" rather than "ordinary" income. Another rule distinguishes short-term from long-term gains and losses; the Acharyas' gains and losses fall on the short-term side. Still a third rule limits the deductability of short-term capital losses to $3,000 a year; any excess may be carried forward and deducted in future years. See 26 U.S.C. §1211(b)(1).

Gains and losses from changes in the price of securities are treated as ordinary income (or loss) only for people whose business is the trading of securities—that is, who hold securities as inventory in a retail or wholesale capacity. See *Schafer v. Helvering*, 299 U.S. 171, 174 (1936); *Bielfeldt v. CIR*, 231 F.3d 1035, 1037 (7th Cir. 2000). One example of such a business is that of a broker-dealer, which in its capacity as a market maker holds an inventory of securities that it trades much as Amazon holds and sells an inventory of books. Neither Sankarshan nor Kalpana is a licensed stock broker; the family does not (and legally cannot) hold itself out to the public as offering inventory or execution services in financial markets. Indeed, Sankarshan testified that he used a discount broker to trade stocks for his own account. The discount broker would have been entitled to ordinary-income treatment for its own gains and losses from that activity; Sankarshan, as an investor, must account for his trades as capital gains and losses.

The Acharyas maintain that they, like a broker-dealer, had suppliers (the people who sold the securities they purchased) and customers (the people who bought the securities they sold). That characterization may be useful for some economic purposes but is not relevant to the legal analysis. Sankarshan traded in anonymous markets, and between him and the people he calls "customers" stood his own broker, the floor brokers, the specialists at the stock exchange, and the broker representing the other side of the transaction. Those are the people whose business it is to put investors together and who properly receive ordinary-income treatment. Indeed, even had one of the Acharyas traded securities without an intermediary (as is common when dealing with stock in closely-held firms) this would not mean that the transaction reflected a "business" rather than an investment. Sankarshan conceded that he traded in securities seeking to make money from capital appreciation, rather than (as a broker-dealer would do) from the spread between bid and ask prices on an inventory. That is quite enough to support the Tax Court's decision.

The Acharyas also maintain that they are entitled to deduct $5992 for interest on credit-card balances that were used to purchase securities. The Tax Court rejected this claim because they did not produce statements showing how much had been paid in interest during 2001 and, of that total, how much of the interest was attributable to investments in securities. The Acharyas concede that $5992 is just an estimate. The Tax Court was not required to accept in lieu of hard numbers a

credit-bureau report, which showed balances on the accounts but not the amount paid in interest (let alone the amount of interest allocable to investments).

AFFIRMED