129 T.C. No. 7

UNITED STATES TAX COURT


ROBERT L. PERKINS, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21997-04L.               Filed September 13, 2007.


        P timely filed his Federal income tax return for
2000 but failed to pay fully the amount reported as
due.  R increased the Federal income tax liability
reported by P on his 2000 return and assessed the
increase pursuant to sec. 6213(b)(1), I.R.C.  After
expiration of the period in which to request abatement
of the increased assessment under sec. 6213(b)(2),
I.R.C., P appealed the increase in a letter that was
forwarded to R's Office of Appeals.

        While consideration by Appeals was pending, R
issued P a notice of intent to levy to collect the
outstanding liability for 2000.  P timely requested a
hearing pursuant to sec. 6330(a)(3)(B), I.R.C.  Before
a hearing was scheduled, R's Office of Appeals
responded to P's appeal of the increase in his 2000
liability, treating it as a claim for abatement and
denying it.  Thereafter, the Appeals employee
conducting P's hearing under sec. 6330, I.R.C., did not
allow P to challenge the underlying tax liability on

the grounds that P's previous submission to R's Office of Appeals constituted a prior opportunity to dispute the liability under sec. 6330(c)(2)(B), I.R.C. A notice of determination sustaining the proposed levy was thereupon issued under the signature of the same Appeals officer who had denied P's previous submission. P timely petitioned for review of the notice of determination under sec. 6330(d), I.R.C.

Held: P did not have an "opportunity to dispute" his underlying tax liability for 2000 within the meaning of sec. 6330(c)(2)(B), I.R.C., by virtue of his earlier request, still pending when the collection action was initiated, for Appeals Office consideration and abatement of the liability. Consequently, it was error for the Appeals employee conducting P's hearing under sec. 6330, I.R.C., to refuse to consider P's challenges to the underlying tax liability, and P's challenges are subject to de novo review in this Court.

Held, further, P's challenges to his underlying tax liability are groundless. Accordingly, the refusal to consider them at P's hearing was harmless error.

Held, further, the possibility that an Appeals officer having "prior involvement" with respect to the unpaid tax, within the meaning of sec. 6330(b)(3), I.R.C., participated in the conduct of P's hearing is not grounds for a remand in this case, since all of petitioner's arguments against the collection action were frivolous or groundless.

Robert L. Perkins, pro se.

James M. Klein, for respondent.

GALE, Judge: Pursuant to section 6330(d)(1),[1] petitioner seeks review of respondent's determination to proceed with a levy to collect petitioner's Federal income tax liability for taxable

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended.

year 2000.  We conclude that respondent may proceed with collection.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.  Petitioner resided in Wisconsin when he filed the petition in this case.

On April 16, 2001, petitioner timely filed his Federal income tax return for 2000 on a Form 1040, U.S. Individual Income Tax Return.  Before doing so, he had received a publication from respondent entitled "2000 Instructions for Form 1040" which included a discussion of special rules for traders in securities. On line 13 of the Form 1040, "Capital gain or (loss)", petitioner checked a box indicating that no Schedule D, Capital Gains and Losses, was required and reported $55,778.28 in losses, which offset ordinary income in that amount.  As he indicated on the Form 1040, petitioner did not attach a Schedule D.  The Form 1040 did not include any election forms, any Schedules C, Profit or Loss From Business, any Forms 4797, Sales of Business Property,[2] or any statement to the effect that petitioner was a trader in securities or was invoking section 475(f).  Petitioner has not at

_____

[2] Respondent's publication, "2000 Instructions for Form 1040", instructs taxpayers electing to use "mark-to-market" accounting for securities held in connection with a trade or business of trading securities to report gains and losses on Form 4797.

any time elected to have section 475(f) apply to the securities he held in 2000.

Respondent sent petitioner a letter dated July 12, 2001, requesting that petitioner complete a Schedule D with information to support his entry of $55,778.28 in losses on line 13 of the Form 1040. Petitioner thereupon completed a Schedule D for 2000 and submitted it to respondent. Petitioner's Schedule D reported net short-term capital losses of $55,778.28 and no long-term capital gains or losses.

Respondent subsequently sent petitioner a so-called math error notice[3] dated September 3, 2001, which stated: "We changed your 2000 return. As a result of these changes, you owe $30,965.64. * * * You figured your capital gains and losses on Schedule D incorrectly." Respondent did not send a notice of deficiency to petitioner for 2000.

Petitioner responded to the math error notice by means of a letter to respondent dated December 5, 2001, in which he maintained that his 2000 return as originally filed was correct, including the position that no Schedule D needed to be filed. In response, respondent sent petitioner a Letter 105C dated March 20, 2002, advising of the disallowance of most of petitioner's claimed $55,778.28 loss on the grounds that the loss was limited

---

[3] See sec. 6213(b)(1). The letter was headed "We Changed Your Return-You Have an Amount Due".

to $3,000. The letter provided instructions for the filing of an appeal of the disallowance. Pursuant to the instructions, petitioner appealed the disallowance in the Letter 105C by means of a letter to respondent dated May 17, 2002, in which he offered his reasons for disagreeing, including a declaration that his statements were true under penalties of perjury (Appeals request).

On August 10, 2002, before responding to petitioner's Appeals request, respondent sent petitioner a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing" (Notice of Intent to Levy), notifying petitioner that respondent intended to satisfy petitioner's outstanding 2000 tax liability by a levy, and advising petitioner of his right to request a hearing. Petitioner timely requested a hearing on a Form 12153, Request for a Collection Due Process Hearing, sent to respondent on September 6, 2002. Petitioner's Form 12153 disputed both the underlying tax liability and the "appropriateness of the collection action", in light of the fact that consideration of his Appeals request was still pending.

At some point, petitioner's Appeals request was referred to and considered by respondent's Office of Appeals. On April 28, 2003, before any action was taken with respect to petitioner's hearing request under section 6330, the Appeals Office issued petitioner a written response to his Appeals request. Treating

petitioner's Appeals request as a claim for abatement,[4] the Appeals Office denied it and advised petitioner that he could pursue the matter further by filing suit in the U.S. District Court or the U.S. Court of Federal Claims.[5]  The Appeals Office response was signed by Timothy I. Gukich as "Appeals Team Manager".

On June 10, 2004, approximately 21 months after his request for a hearing under section 6330 and more than 13 months after denying his Appeals request, the Appeals Office sent a letter to petitioner offering him the opportunity to schedule a section 6330 hearing.  In accordance with petitioner's request, a hearing was conducted via telephone by Settlement Officer Gwenda Dumas on August 31 and October 5, 2004.  Petitioner was not allowed to raise challenges to the underlying tax liability during the hearing.  Respondent thereupon sent petitioner a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330", with a Letter 3193 attached, dated October 15, 2004.  The notice of determination was signed by Timothy I. Gukich, "Appeals Team Manager", and concluded that it would be

---

[4] The parties have stipulated that petitioner did not file a Form 1040X, Amended U.S. Individual Income Tax Return, for 2000.

[5] Insofar as the record discloses, petitioner did not file suit in either court.  However, on Mar. 22, 2004, petitioner filed a petition for redetermination of a deficiency with this Court.  Petitioner's case arising from that petition was dismissed for lack of jurisdiction on May 25, 2004.

appropriate for respondent to proceed with the proposed levy. The notice of determination reasoned that petitioner could not challenge the underlying tax liability because he had received a "prior opportunity to appeal."[6]

Petitioner timely petitioned the Court for review of respondent's determination.

## OPINION

### I. Background

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for taxes who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6331(d) provides that the levy authorized in section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before levy. Section 6330(a) requires the Secretary to send a written notice to the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a section 6330 hearing at least 30 days before any levy is begun.

If a section 6330 hearing is requested, the hearing is to be conducted by an officer or employee of the Commissioner's Office of Appeals who has had no prior involvement with respect to the

---

[6] The notice did not address the issue raised by petitioner in his hearing request concerning the appropriateness of respondent's initiating a collection action when petitioner's abatement request was pending before respondent's Appeals Office.

unpaid taxes at issue before the hearing. Sec. 6330(b)(1), (3). The Appeals officer or employee shall at the hearing obtain verification that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability at a hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B). A taxpayer is treated as not having had an opportunity to dispute a liability that is reported as due on a return. Montgomery v. Commissioner, 122 T.C. 1 (2004). An opportunity to dispute the underlying liability that precludes a taxpayer from challenging it in a section 6330 hearing includes a prior opportunity for a conference with the Commissioner's Office of Appeals when the taxpayer availed himself of that opportunity. Lewis v. Commissioner, 128 T.C. 48, 61 (2007); see also sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

At the conclusion of the hearing, the Appeals officer or employee must determine whether and how to proceed with collection and shall take into account (i) the verification that the requirements of any applicable law or administrative

procedure have been met; (ii) the relevant issues raised by the taxpayer; (iii) challenges to the underlying tax liability by the taxpayer, where permitted; and (iv) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

With respect to determinations made before October 17, 2006,[7] we have jurisdiction to review the Appeals Office's determination where we have jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Generally, we may consider only those issues that the taxpayer raised during the section 6330 hearing.  See sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.; see also Magana v. Commissioner, 118 T.C. 488, 493 (2002).  Where the underlying tax liability is properly at issue, we review the determination de novo.  E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not at issue, we review the determination for abuse of discretion.  Id. at 182.  Whether an abuse of discretion has occurred depends upon whether the exercise of

_____

[7] Pursuant to the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855(a), 120 Stat. 1019, this Court has jurisdiction with respect to all determinations in sec. 6330 proceedings, effective for determinations made after the date which is 60 days after the Aug. 17, 2006 date of enactment, or Oct. 16, 2006.

discretion is without sound basis in fact or law.  See Freije v. Commissioner, 125 T.C. 14, 23 (2005); Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).

## II.  Challenges to the Underlying Liability

Petitioner's principal argument is that he did not receive the hearing to which he was entitled under section 6330 because the Appeals employee refused to consider challenges to the underlying tax liability.  Pursuant to section 6330(c)(2)(B), the existence or amount of the underlying tax liability may be challenged only if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.

No statutory notice of deficiency was sent to petitioner for 2000.  The unpaid tax that respondent seeks to collect by levy consists in part of an amount reported as due on petitioner's return but unpaid, and an additional amount assessed by respondent pursuant to the "math error" procedures under section 6213(b)(1).

The settlement officer did not permit petitioner to challenge the underlying tax liability in connection with his hearing, on the grounds that he had a prior opportunity to dispute the liability within the meaning of section 6330(c)(2)(B)

by virtue of his making a submission to the Appeals Office in response to the Letter 105C (i.e., petitioner's Appeals request).

A. Challenges to Self-Assessed Amount

A portion of the underlying tax liability was reported by petitioner as due on his return. Under Montgomery v. Commissioner, supra, petitioner was entitled to challenge that portion of the liability. Petitioner's earlier Appeals request concerned only the liability arising from respondent's disallowance of petitioner's claimed capital losses exceeding $3,000. Thus, the Appeals employee's position that petitioner was precluded from challenging any portion of the underlying liability was erroneous.

B. Challenges to Section 6213(b)(1) Assessment

The remaining portion of the underlying tax liability is attributable to the additional assessment made by respondent pursuant to section 6213(b)(1), resulting from the disallowance of petitioner's claimed capital losses in excess of the $3,000 capital loss limitation of section 1211(b).[8] The notice of

_____

[8] We are satisfied that respondent was entitled to make this assessment under sec. 6213(b)(1). Petitioner's claimed $55,778.28 capital loss constituted a "mathematical or clerical error" within the meaning of sec. 6213(b)(1) because it was "an entry on a return of a deduction * * * in an amount which exceeds a statutory limit imposed by subtitle A [of Title 26]", which limit "is expressed * * * as a specified monetary amount", and "the items entering into the application of such limit appear on such return". Sec. 6213(g)(2)(E). With regard to the last requirement, we note that the Schedule D belatedly submitted by petitioner disclosed to respondent that the claimed $55,778.28

(continued...)

determination also concluded that petitioner was precluded from challenging this portion of the underlying liability because of the consideration by the Appeals Office of his Appeals request. The difficulty with this conclusion is that the Appeals Office had not taken any action with respect to petitioner's Appeals request when the Notice of Intent to Levy was issued to him.

Section 6330(c)(2)(B) states with respect to the right of a person, whose property is subject to levy, to challenge the underlying tax liability in a section 6330 hearing as follows:

> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or <u>did not</u>

---

[8](...continued)
loss arose from sales of capital assets and the extent of any gains from such sales, thus triggering the $3,000 limit of sec. 1211(b). Nothing on the return or its accompanying schedules indicated that petitioner had taken the position that he was entitled to report his securities transactions under sec. 475(f), as he apparently now claims in this proceeding.

Petitioner would have been entitled to have the foregoing "math error" assessment abated, and the proposed increase in his 2000 tax liability considered instead under the deficiency procedures, if he had so requested within 60 days after the "math error" notice was sent to him on Sept. 3, 2001. See sec. 6213(b)(2)(A). However, petitioner failed to do so within the allotted 60 days; his letter disputing the "math error" assessment was not sent until Dec. 5, 2001.

Respondent does not contend that petitioner's right to invoke deficiency procedures with respect to the asserted liability pursuant to sec. 6213(b)(2)(A) constituted "an opportunity to dispute" the liability within the meaning of sec. 6330(c)(2)(B). We note in this regard that the "math error" notice sent to petitioner nowhere disclosed to him his right to deficiency procedures, let alone that such right was contingent upon petitioner's making the request within 60 days.

> otherwise <u>have</u> an opportunity to dispute such tax liability. [Emphasis added.]

The statute utilizes the past tense in reference to the opportunity to dispute, indicating that Congress contemplated that the dispute opportunity would have already transpired when the hearing under section 6330 occurred. Respondent's regulations confirm this interpretation: "An opportunity to dispute a liability includes a <u>prior</u> opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. (emphasis added). In upholding the validity of this regulation recently, we concluded that "Congress * * * intended to preclude taxpayers who were <u>previously</u> afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court." <u>Lewis v. Commissioner</u>, <u>supra</u> at 61 (emphasis added).

Should the earlier Appeals conference opportunity be treated as a prior opportunity where, as in this case, the requested conference opportunity is not resolved by Appeals until after the taxpayer has requested, but not received, a section 6330 hearing? We conclude not, because to construe the statute in this manner would consign to the Commissioner's discretion whether the underlying tax liability is subject to judicial review. The Commissioner could cut off judicial review in these circumstances by the simple expedient of processing the Appeals consideration

of the liability outside section 6330 before offering the section 6330 hearing. If the requested section 6330 hearing were offered first, a liability otherwise subject to challenge under section 6330(c)(2)(B) would also be subject to judicial review under section 6330(d) upon the taxpayer's timely appeal. Conversely, if Appeals consideration outside section 6330 proceeds first, the consideration by Appeals operates to preclude a challenge to the underlying liability in the 6330 hearing and any subsequent judicial review. See Lewis v. Commissioner, supra at 60-61. That is precisely the position taken by respondent in this case.

In enacting what is commonly referred to as the "collection due process" provisions of sections 6330 and 6320, Congress intended to confer new rights upon taxpayers when the Commissioner initiated collection actions against them, including, in designated circumstances, judicial review of the underlying tax liability. Montgomery v. Commissioner, 122 T.C. at 13 (Laro, J., concurring); Davis v. Commissioner, 115 T.C. 35, 37 (2000); Offiler v. Commissioner, 114 T.C. 492, 495 (2000); Goza v. Commissioner, 114 T.C. at 179-180. To construe section 6330(c)(2)(B) to preclude a challenge to, and judicial review of, the underlying tax liability in the circumstances of this case would circumscribe the right to judicial review that Congress intended to extend to taxpayers against whom collection actions have been initiated. We accordingly hold that petitioner did not

have an "opportunity to dispute" the underlying tax liability within the meaning of section 6330(c)(2)(B) by virtue of an Appeals review that was not completed until after a hearing was requested under section 6330. To hold otherwise would permit the Commissioner to cut off a taxpayer's right to judicial review of his challenge to the underlying tax liability by the simple expedient of postponing the section 6330 hearing until after a request for Appeals consideration, pending when the collection action was initiated, was completed by Appeals.[9] We therefore conclude that the Appeals employee erred in refusing to consider petitioner's challenge to the underlying tax liability; petitioner's underlying liability was properly at issue in his section 6330 hearing and is consequently subject to de novo review in this Court. See, e.g., Goza v. Commissioner, supra at 181-182.

C.    De Novo Review of Underlying Tax Liability

Having decided that petitioner was entitled to challenge his underlying liability in the hearing and obtain judicial review thereof, we proceed to consider de novo the merits of petitioner's challenges. At trial, we gave petitioner an

---

[9] We note in this regard that the same Appeals officer who considered and denied any relief with respect to petitioner's Appeals request also signed off on the notice of determination which took the position that petitioner was precluded from challenging the underlying liability in the sec. 6330 proceeding because of "prior" Appeals consideration.

opportunity to raise any issue concerning the underlying liability that he contended he would have raised at the hearing.

### 1. Self-Assessed Amount

Petitioner has not addressed that portion of the underlying liability reported as due on his return but unpaid, other than his claim regarding the limitations period for assessment or collection that we find to be without merit. See infra at II.C.3. We therefore deem that portion conceded.

### 2. Section 6213(b)(1) Assessment: Claim Under Section 475(f)

As for the portion of the underlying liability attributable to respondent's disallowance of petitioner's claimed capital losses in excess of $3,000, petitioner contends that he is entitled to the claimed losses on the "basis of being a day trader". While section 475(f) allows persons engaged in a trade or business as a trader in securities to treat the gain or loss from such securities as ordinary income or loss (not subject to the section 1211(b) limitation on recognition of capital losses), see sec. 475(d)(3)(A)(i), (f)(1)(D), we are satisfied after a de novo review of petitioner's claim that he has not shown eligibility for treatment of his securities losses under section 475(f).

Section 475(f) allows ordinary gain or loss treatment in conjunction with use of the mark-to-market method of accounting for the securities used in the securities trader's trade or

business.  Sec. 475(f)(1)(A).  A taxpayer must elect the provision, however, no later than the due date (without regard to extensions) for the return for the year immediately preceding the election year.  Rev. Proc. 99-17, sec. 5.03, 1999-1 C.B. 503, 504; Lehrer v. Commissioner, T.C. Memo. 2005-167; see also Knish v. Commissioner, T.C. Memo. 2006-268.  Petitioner admits that he has made no such election at any time.  Even if we were to treat petitioner's averments in this proceeding as an attempt to elect section 475(f) notwithstanding the requirements of Rev. Proc. 99-17, supra, such an election, coming almost 5 years after the close of the year at issue, would give petitioner an impermissible benefit of hindsight.  Compare Vines v. Commissioner, 126 T.C. 279 (2006)(3-month-late section 475(f) election permitted under section 301.9100-3, Proced. & Admin. Regs., where taxpayer made no securities trades between election's due date and its actual filing), with Knish v. Commissioner, supra (6-month-late section 475(f) election made on Form 3115, Application for Change in Accounting Method, was ineffective); Lehrer v. Commissioner, supra (34-month-late section 475(f) election made on amended Tax Court petition was ineffective).

    In addition to the absence of an election, petitioner presented no evidence beyond his uncorroborated testimony that he was engaged in a trade or business of trading securities.

Supporting the contrary conclusion is his 2000 return, which contains no Schedule C for any trade or business. Finally, the Schedule D submitted by petitioner, which documents the securities sales giving rise to his claimed $55,778.28 loss, demonstrates to our satisfaction that petitioner did not employ mark-to-market accounting with respect to his securities. No securities were marked to market as of yearend 2000.

In sum, petitioner's contention that he was entitled to recognize a $55,778.28 loss in 2000 on account of his being a "day trader" is groundless. Aside from his apparent reliance on section 475(f), petitioner's remaining argument against the application of the section 1211(b) limitation on his claimed losses is that the restriction is unfair or inappropriate for taxpayers in his circumstances and/or that the recognition of capital losses should not be limited because the recognition of capital gains is not. These arguments merit no discussion; the applicability of section 1211(b) to taxpayers in petitioner's circumstances is well established. See, e.g., Marrin v. Commissioner, T.C. Memo. 1997-24, affd. 147 F.3d 147 (2d Cir. 1998); see also Acharya v. Commissioner, 225 Fed. Appx. 391 (7th Cir. 2007); Jamie v. Commissioner, T.C. Memo. 2007-22.

3. Limitations Period Claims

Petitioner also asserted in his pretrial memorandum that the periods for assessment and/or collection have expired with

respect to the liability at issue. Assuming that petitioner would have presented this issue if the Appeals employee had permitted challenges to the underlying liability, the contention is groundless. Generally, the amount of any tax imposed by the Internal Revenue Code must be assessed within 3 years after the return is filed. Sec. 6501(a). The liabilities at issue were assessed in 2001, well within the 3 years after the filing of the 2000 return on April 16, 2001. The 10-year period of limitations on collection commenced upon the assessments of the tax in 2001 and therefore does not expire until sometime in 2011. See sec. 6502(a).

III. Issues Other Than the Underlying Tax Liability

A. Section 6330(c)(1) Verification

Petitioner also argues, without citing any specifics, that the Appeals employee conducting his section 6330 hearing failed to satisfy section 6330(c)(1), which requires that the Appeals officer obtain verification that the requirements of applicable law or administrative procedure have been met. We disagree. The notice of determination catalogues the investigation undertaken by the Appeals employee to satisfy section 6330(c)(1), petitioner cites no specific error, and we have likewise found no infirmity in the process by which the liabilities at issue were assessed. A portion of the unpaid liability was assessed after being

reported as due by petitioner, and the remainder was properly assessed pursuant to section 6213(b)(1).

B.    Appeals Officer's Prior Involvement

Finally, petitioner argues that his hearing failed to satisfy the requirements of section 6330(b)(3), which provides that the hearing "shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320."  Section 301.6330-1(d)(2), A-D4, Proced. & Admin. Regs., provides:

> Prior involvement by an employee or officer of Appeals includes participation or involvement in an Appeals hearing (other than a CDP [collection due process] hearing held under either section 6320 or section 6330) that the taxpayer may have had with respect to the tax and tax periods shown on the CDP notice.

Given that he signed the April 28, 2003, Appeals letter denying petitioner's Appeals request, we believe Appeals Team Manager Gukich had prior involvement with respect to petitioner's 2000 unpaid tax.  (The Appeals letter signed by Mr. Gukich preceded petitioner's section 6330 hearing by approximately 16 months.)

Somewhat less clear is whether Mr. Gukich's signature as Appeals Team Manager on the notice of determination demonstrates that he participated in the "conduct" of petitioner's section 6330 hearing within the meaning of section 6330(b)(3).  The parties have stipulated that the hearing "was conducted via

telephone by Settlement Officer Gwenda Dumas".  Nonetheless, even if we assume, without deciding, that Mr. Gukich participated in the conduct of petitioner's hearing, it would not be grounds for a remand in this case, because the arguments that petitioner has raised against the collection action are all frivolous and groundless.  Thus, we conclude that, even if Mr. Gukich's apparently supervisory role in issuing the notice of determination were considered "conduct" of the hearing for purposes of section 6330(b)(3), such participation by Mr. Gukich could not have affected the outcome of the section 6330 hearing and was therefore harmless error.

IV.  Conclusion

Petitioner raised no other issues.  Because we find that the Appeals employees' refusal to allow petitioner to challenge the underlying tax liability and Mr. Gukich's possible participation in the conduct of the hearing after prior involvement would constitute harmless error, we conclude that neither requires that this case be remanded to Appeals for a further hearing; it would not be "necessary or productive" to do so.  See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).  Instead, we shall

sustain respondent's determination to proceed with the levy.  To reflect the foregoing,

<u>Decision will be entered for respondent</u>.