T.C. Memo. 2012-113

UNITED STATES TAX COURT

IRVING WATCHMAN AND STELLA WATCHMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25932-06L.                    Filed April 19, 2012.

Irving Watchman and Stella Watchman, pro sese.

<u>Wendy Dawn Gardner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioners Irving and Stella

Watchman seek review of respondent's determination to proceed with a levy to

---

[1]Unless otherwise noted, all section references are to the Internal Revenue
Code of 1986, as amended, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

collect unpaid income tax, additions to tax, and interest for their 2000 taxable year.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. The Watchmans resided in New Jersey when they filed the petition.

On April 25, 2001, the Watchmans timely filed, under extension, their joint 2000 Federal income tax return. Therein they reported a tax liability of $40,604 and withholding of $12,778.[2] They had also made payments totaling $8,026 toward their 2000 income tax liability on April 18, 2001. The $40,604 of tax was assessed shortly after the Watchmans filed their return, together with a $1,349 addition to tax under section 6654 for failure to pay estimated tax and $249 of interest.

On May 1, 2001, the Watchmans' then attorney/accountant, Herbert Kuschner, negotiated an installment agreement with the Internal Revenue Service (IRS) by telephone covering the Watchmans' unpaid taxes for 2000 and two prior

---

[2]All dollar amounts are rounded to the nearest dollar.

years, 1998 and 1999.[3] Neither Mr. nor Mrs. Watchman participated in or was present during the call. The installment agreement revised a prior installment agreement which covered the Watchmans' 1998 taxable year and an earlier year. The revised agreement required the Watchmans to make monthly payments of $996.[4]

On December 9, 2002, the IRS issued the Watchmans a notice of deficiency for their 2000 taxable year which determined a deficiency of $2,574. On January 29, 2003, Mr. Kuschner wrote to the IRS seeking confirmation of the oral approval he had received for the deficiency amount to be added to the Watchmans' outstanding installment agreement. On January 30, 2003, the Watchmans signed a Form 5564, Notice of Deficiency Waiver, consenting to immediate assessment of the deficiency. Respondent admits that the request to add the deficiency amount was granted and the installment agreement was modified to add $2,574 to the Watchmans' outstanding balance for their 2000 taxable year on February 24, 2003.

---

[3]Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for the Watchmans' 1998, 1999, and 2000 taxable years show that their cumulative unpaid tax for those years, including interest and additions to tax, was approximately $60,000 on May 1, 2001.

[4]The record contains no copy of the installment agreement and does not otherwise disclose its terms with any specificity.

The Watchmans made monthly payments of $996 under the installment agreement from May 2001 until June 2005. In so doing, they satisfied their liability for taxable years 1998 and 1999, including interest and additions to tax.

The Watchmans received monthly statements from the IRS with respect to the installment agreement reflecting their monthly $996 payments. From at least April 2002 through November 2003[5] the statements included: (1) the outstanding balance for each year covered by the installment agreement; (2) the amount of each year's balance attributable to interest and the addition to tax for untimely payment (hereinafter sometimes referred to as the penalty); (3) the tax year to which the Watchmans' last payment was applied; and (4) a statement providing that the interest and penalty totals were cumulative and calculated to the due date of the next payment. The amount of interest and penalty attributable to the Watchmans' 2000 taxable year steadily increased on each successive statement, as did the outstanding balance for that year.[6]

---

[5]The parties stipulated statements covering each month from April 2002 through November 2003 (with the exception of August and October 2003). Mr. Watchman testified that he received these statements monthly.

[6]The record also contains two annual installment agreement statements addressed to the Watchmans at the address which was their address for all relevant periods. One annual statement shows that $1,508 in interest and $547 in penalty was added to the Watchmans' balance for taxable year 2000 between July 8, 2002,

(continued...)

The Watchmans failed to make the $996 payment required under the installment agreement for July 2005. Shortly thereafter, the IRS deemed their installment agreement to be in default.

On October 29, 2005, the IRS sent both Mr. and Mrs. Watchman a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, regarding their unpaid tax for 2000, which totaled $29,516. The $29,516 consisted of an assessed balance of $20,450,[7] accrued interest of $6,415, and a $2,651 addition to tax for untimely payment.

Both Mr. and Mrs. Watchman timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On their respective Forms 12153 the Watchmans alleged that their installment payments together with overpayment credits reduced their balance for the 2000 taxable year to less than $7,000.[8]

---

[6](...continued)
and June 2, 2003. The other annual statement shows that $1,513 in interest and $685 in penalty was added to the Watchmans' taxable year 2000 balance between June 7, 2004, and July 11, 2005.

[7]The assessed balance included the tax the Watchmans reported due on their return, the deficiency amount, and the sec. 6654 addition and interest that were assessed shortly after the Watchmans filed their return for 2000, reduced by the sum of their payments made and credits allowed before October 29, 2005.

[8]Mr. Kuschner also submitted a Form 12153 on the Watchmans' behalf which contained similar allegations.

On April 4, 2006, Mr. Watchman had a face-to-face conference with an Appeals officer. At the conference Mr. Watchman claimed that the amount of the proposed levy was too high because the Watchmans' installment agreement did not call for interest and penalty accrual on the outstanding balance.[9] An offer-in-compromise (OIC) was also discussed at the conference, and the Appeals officer gave Mr. Watchman the forms necessary to submit one.

In May 2006 the Watchmans submitted a Form 656, Offer in Compromise, to the IRS' Centralized Offer in Compromise Unit in Holtsville, New York. The Appeals officer also received a copy. In the OIC, which was based on doubt as to liability, the Watchmans again claimed that the installment agreement did not require interest and penalty accrual and offered to pay $6,000 to compromise their unpaid liability.

On November 16, 2006, the Appeals officer issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the proposed levy. The notice of determination states the following with respect to the Watchmans' claim that interest and penalties had been waived as part of their installment agreement: "You were advised that interest and penalty continues to

_____

[9]Neither Mr. Watchman nor the Appeals officer had a copy of the installment agreement at the conference.

accrue until the liability is fully satisfied. A Form 433-D, Installment Agreement, was presented and terms of installment agreements were reviewed." With respect to the Watchmans' proposed OIC, the notice states: "You proposed an offer in compromise as an alternative resolution. The offer was returned due to insufficient information. We requested financial information for collectibles determination. However, you failed to submit the information required for alternative resolution consideration." The notice concludes that "An alternative to the proposed collection action was not presented." The Watchmans timely filed a petition seeking review of the Appeals officer's determination.

OPINION

I.    Collection Hearing Procedure

Section 6330(a) requires that written notice be given to a person upon whose property the Secretary intends to levy to collect an unpaid tax (taxpayer) advising him of the amount of the unpaid tax and of his right to a hearing. If a hearing is requested, the hearing is to be conducted by an officer or employee of the IRS Appeals Office with no prior involvement with respect to the unpaid tax at issue. Sec. 6330(b)(1), (3). At the hearing, the Appeals officer shall obtain verification that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the hearing any relevant issue

relating to the unpaid tax or the proposed levy, including offers of collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may also challenge the existence or amount of the underlying tax liability if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B). The "underlying tax liability" for this purpose refers to the tax imposed under the internal revenue laws, including additions to tax and statutory interest. See Urbano v. Commissioner, 122 T.C. 384, 392-393 (2004); Katz v. Commissioner, 115 T.C. 329, 339 (2000).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and shall take into account: (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) the relevant issues raised by the taxpayer; (3) the taxpayer's challenges to the underlying tax liability, where permitted; and (4) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

We review determinations concerning the underlying tax liability de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the

underlying tax liability is not at issue, we review the Appeals officer's administrative determinations for abuse of discretion. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. at 182. An abuse of discretion occurs when the exercise of discretion is arbitrary, capricious, or without sound basis in fact or law. <u>Pough v. Commissioner</u>, 135 T.C. 344, 350 (2010); <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

## II.    The Watchmans' Arguments

The Watchmans argue that the amount of the levy is excessive because it includes interest and penalties that should not have accrued under the terms of their installment agreement. According to the Watchmans, interest and penalties that would have accrued on their outstanding tax liabilities after May 1, 2001, were waived in connection with the installment agreement their attorney negotiated on their behalf. Accordingly, the Watchmans contend, the outstanding liability for their 2000 taxable year (and their liabilities for 1998 and 1999) were to be satisfied with the payment of $996 per month for 60 months. The Watchmans also contend that the Appeals officer erred in rejecting their $6,000 OIC. We will separately address these arguments.[10]

---

[10]The Watchmans have not alleged error with respect to any other aspect of the determination. The notice of determination reflects that the Appeals officer

(continued...)

A.      Accrual of Interest and Additions to Tax

The Watchmans characterize their installment agreement as a "self liquidating tax repayment" whereby they were to make monthly payments of $996 for 60 months to satisfy their unpaid tax obligations for years 1998, 1999, and 2000, which, on the date of the agreement, totaled nearly $60,000.  By the Watchmans' calculation, their monthly payments from May 2001 through June 2005, together with overpayment credits and certain subsequent payments, reduced their outstanding balance to approximately $4,000.[11]  Respondent argues that by law interest and penalties accrued on the Watchmans' unpaid tax and, absent evidence they requested or received abatement, the Appeals officer did not err in sustaining the levy.

---

[10](...continued)
verified that the requirements of applicable law and administrative procedure for the levy were satisfied.  See sec. 6330(c)(1); Hoyle v. Commissioner, 131 T.C. 197, 202-203 (2008) (Tax Court reviews Appeals officer's verification under sec. 6330(c)(1) without regard to whether taxpayer raised the issue).

[11]Although the Watchmans are challenging all of the interest and penalties that accrued after their installment agreement was entered into, they have not distinguished the amount of interest and penalties attributable to 2000 from the amounts attributable to 1998 and 1999.  This accounts for the substantial disparity between the amount the Watchmans believe is the outstanding balance for their 2000 taxable year and the amount of the proposed levy.

The Watchmans' claim--that the interest and additions to tax were waived or settled in connection with their entering into the installment agreement--is a challenge to the underlying tax liability, subject to our de novo review.[12] See Urbano v. Commissioner, 122 T.C. at 390-393 (taxpayers' claim that interest was settled by revenue agent is challenge to underlying tax liability subject to de novo review).[13]

Statutory interest accrues on underpayments of tax from the last date prescribed for payment to the date the tax is paid. Sec. 6601(a). The last date prescribed for payment is determined without regard to any installment agreement. Sec. 6601(b); sec. 301.6159-1(j), Proced. & Admin. Regs.[14] The addition to tax for

---

[12]We note in this regard that respondent relies extensively on exhibits and testimony that are outside the administrative record.

[13]The notice of deficiency for 2000 that the Watchmans received did not afford them an opportunity to dispute the interest at issue. See, e.g., Smith v. Commissioner, T.C. Memo. 2009-33; see also sec. 6330(c)(2)(B). In addition, because, as discussed infra, we are not persuaded by the merits of the Watchmans' challenge to their underlying tax liability, we assume without deciding that the 2000 notice of deficiency likewise did not foreclose the Watchmans' entitlement to dispute the addition to tax for untimely payment (because they claim the addition had been waived upon their entering the installment agreement, before the notice of deficiency was issued).

[14]During 2001, when the installment agreement at issue was entered into, sec. 301.6159-1(j), Proced. & Admin. Regs., was codified at sec. 301.6159-1(f), Proced. & Admin. Regs.

failure to timely pay is imposed monthly, beginning after the last date for payment has passed and continuing until the tax is paid or the addition, in the aggregate, equals 25% of the tax shown on the return. Sec. 6651(a)(2). The addition continues to accrue for any month during which an installment agreement for payment of the tax is in effect, although the rate is reduced from 0.5% of the tax shown on the return to 0.25% of such amount in such circumstances.[15] Sec. 6651(h).

Section 6159 authorizes the IRS to enter into installment agreements for the satisfaction of tax liabilities, including interest and penalties. When the Watchmans' installment agreement was entered into in 2001, the IRS interpreted section 6159 (as then in effect) as precluding installment agreements that provided for less than full payment of all tax, interest, and penalties. See H.R. Conf. Rept. No. 108-755, at 649 (2004), 2004 U.S.C.C.A.N. 1341, 1698-1699. The IRS' interpretation was reflected in the Internal Revenue Manual, which instructed IRS employees that "[o]nly agreements that provide for full payment of liabilities may be granted" and that "[d]uring the course of [installment] agreements, penalty and interest continue to accrue." Internal Revenue Manual pt. 5.14.1.1 (Oct. 1, 2000). In 2004 Congress

---

[15]The monthly statements in the record indicate that the addition to tax was calculated using the 0.25% rate while the Watchmans' installment agreement was in effect.

amended section 6159 to authorize the IRS to enter installment agreements that do not provide for full payment. See H.R. Conf. Rept. No. 108-755, supra at 649; see also sec. 6159(a).[16] The amendment was effective, however, only for agreements entered into on or after the October 22, 2004, date of enactment. See American Jobs Creation Act of 2004, Pub. L. No. 108-357, sec. 843(c), 118 Stat. at 1600.

Accepting the Watchmans' contentions requires us to believe that the IRS personnel who processed the Watchmans' installment agreement disregarded clear and unequivocal guidance forbidding partial payment installment agreements. Moreover, the Watchmans have not even indicated what particular circumstances of theirs might justify extraordinary treatment of their interest and penalty liability not afforded other taxpayers given installment agreements.

The evidence that interest and penalties were not waived for the Watchmans is overwhelming. First, the monthly statements the Watchmans received from the

_____

[16]Before its amendment in 2004 sec. 6159(a) provided: "The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection of such liability." (Emphasis added.) Since amendment sec. 6159(a) provides: "The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability." (Emphasis added.)

IRS while their installment agreement was in effect all show the accrual of interest and penalties on the outstanding balance. Second, the IRS employee who entered into the installment agreement on the IRS' behalf credibly testified that, although she did not recall dealing with the Watchmans or Mr. Kuschner, she had entered into 50 to 100 installment agreements on behalf of the IRS and did not recall one that involved fixed payments without the accrual of interest and penalties. She further testified that she did not have authority to abate interest and penalties in connection with installment agreements and that the Watchmans' transcripts of account do not reflect that they requested abatement. Third, and finally, the Watchmans have failed to explain how, if their agreement was to pay $996 per month for 60 months to satisfy their liability, they could roll the $2,574 deficiency amount into the agreement on February 24, 2003, without changing the amount of the monthly payment or the 60-month period.

Ultimately, when the foregoing evidence and the then-applicable IRS policy against partial payment installment agreements are weighed against the Watchmans' testimony--bearing in mind they were not present when the agreement was negotiated--their contentions do not persuade us. On this record, we are unable to say whether the Watchmans misunderstand the terms negotiated by Mr. Kuschner or whether instead he actually misled them in that regard. In any event, the

overwhelming weight of the evidence persuades us that there was no waiver of statutory interest and penalty accruals on the Watchmans' 2000 tax liability in connection with their installment agreement. Their challenge to the underlying tax liability is therefore unavailing.

B. Offer-in-Compromise

The Watchmans also argue that the Appeals officer erred by rejecting their May 2006 OIC of $6,000 based on doubt as to liability. We review an Appeals officer's decision to reject an OIC for abuse of discretion. Murphy v. Commissioner, 125 T.C. 301, 319-320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

In the notice of determination, the Appeals officer treated the Watchmans' OIC as an offer based on doubt as to collectibility in that she rejected it on the grounds that the Watchmans had failed to provide requested financial information. However, the Watchmans submitted an OIC on the basis of doubt as to liability, and taxpayers making such offers are not required to provide financial information. See sec. 301.7122-1(d)(1), Proced. & Admin. Regs.

While the Appeals officer's treatment of the Watchmans' OIC constituted clear error, we conclude that it was harmless error. Error is harmless when it causes no prejudice or does not affect the ultimate determination in the case. See Perkins v. Commissioner, 129 T.C. 58, 70-71 (2007); Estate of Mangiardi v. Commissioner,

T.C. Memo. 2011-24, aff'd, 442 Fed. Appx. 526 (11th Cir. 2011). Harmless error does not give rise to an abuse of discretion. See Perkins v. Commissioner, 129 T.C. at 70-71.

In their OIC the Watchmans made only the same argument advanced in this proceeding--namely, that their installment agreement waived statutory interest and penalty accruals. We have undertaken de novo review of that claim and rejected it. Accordingly, although the Appeals officer's ground for rejecting the Watchmans' OIC was erroneous, that error was harmless as rejection of the OIC was warranted in any event. See West v. Commissioner, T.C. Memo. 2010-250, aff'd without published opinion (1st Cir. Oct. 3, 2011); see also Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

III.    Conclusion

Because the Watchmans challenged only their underlying tax liability and the rejection of their OIC and we have found both contentions meritless, we hold that respondent may proceed with the levy that is the subject of the notice of determination at issue.

To reflect the foregoing,

Decision will be entered

for respondent.