T.C. Summary Opinion 2011-3

UNITED STATES TAX COURT

LINDA M. ALLIVATO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25733-07S.               Filed January 10, 2011.

<u>William B. Clayton</u>, for petitioner.

<u>Audra M. Dineen</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code,

and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case is before the Court on petitioner's request for judicial review of an Internal Revenue Service (IRS) determination to sustain a notice of intent to levy to collect an assessed trust fund recovery penalty. The IRS assessed a trust fund recovery penalty against petitioner for 2002 pursuant to section 6672. The sole issue for decision is whether the IRS abused its discretion in determining that collection by levy may proceed.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in California.

## Assessment of Trust Fund Recovery Penalty

Petitioner operated a now-defunct business named Otavilla Enterprises. Otavilla failed to pay employment taxes to the IRS for the quarter ending December 31, 2002. The IRS determined that petitioner was a responsible person required to pay the employment taxes and proposed a trust fund recovery penalty against her. A notice of the penalty was mailed to petitioner's last known address. The notice was returned to the IRS unclaimed.

Petitioner and Mr. Allivato (Mr. Allivato) remain married and were still living together as husband and wife at the time of trial.

The IRS issued petitioner a Notice of Intent to Levy and Your Right to a Hearing. Petitioner received this notice and responded by requesting a collection due process (CDP) hearing. On August 26, 2005, the IRS issued a letter to petitioner advising her of the CDP hearing date and requesting that she submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals and certain tax returns. The IRS settlement officer (SO) provided several extensions. Petitioner ultimately submitted a completed Form 433-A on January 24, 2006, and a completed Form 656, Offer in Compromise (OIC), on February 15, 2006. Petitioner offered to compromise her liability with a payment of $1,000.[1] Petitioner resubmitted the OIC in July 2006, reducing the offer to $300. Petitioner asserted that because of an injury sustained by Mr. Allivato, her earnings would be reduced. On October 10, 2007, the IRS issued a notice of determination sustaining the levy. The IRS also determined that petitioner's reasonable collection potential was $4,185 and that the $300 offer was insufficient.

---

[1]Petitioner and the SO had discussions about delinquent returns, currently not collectible status, and partial payment of the liability after the submission of the OIC in February 2006 and until July 2006.

Petitioner timely filed a petition contesting the notice of determination. At some point after the petition was filed the parties agreed that petitioner had not had a full opportunity for a CDP hearing because petitioner was not permitted to raise the issue of her underlying liability at the CDP hearing. On December 5, 2008, the Court granted a joint motion to remand the case to respondent's Office of Appeals to afford petitioner an administrative hearing pursuant to section 6330.

The Remand

The SO requested an updated Form 433-A, Federal income tax returns, and other financial information. Petitioner provided a Form 433-A on March 8, 2009. The SO conducted a face-to-face meeting with petitioner on April 8, 2009. Petitioner informed the SO that she no longer received unemployment income and had no other income but was able to pay her expenses through gifts from Mr. Allivato. The SO requested substantiation for the claimed expenses, bank account statements, and information about petitioner and Mr. Allivato's finances. The SO sought this information since petitioner and Mr. Allivato remain married and reside in a community property State.

In two separate letters dated April 29, 2009, petitioner first represented to the SO that before her marriage to Mr. Allivato in Illinois in 1978, the two orally agreed to keep their finances separate. Petitioner asserted that as a result of that

agreement, Mr. Allivato's finances and assets were not relevant to the OIC or collection potential. Petitioner alleged that Mr. Allivato refused to complete a Form 433-A. Petitioner nevertheless provided by enclosure with those letters several check stubs for disability compensation payments Mr. Allivato had received and his bank statement showing his pension income and Social Security benefit payments.

Respondent requested specific information about petitioner's claimed transmutation agreement with Mr. Allivato and an explanation of how Mr. Allivato was able to make payments entitling them to claim a mortgage interest deduction on their 2007 joint income tax return which was greater than their gross earnings for that year.[2]

Petitioner inquired as to the whereabouts of certain tax refunds she had not received. Petitioner filed joint Federal income tax returns with Mr. Allivato for several years after the trust fund recovery penalty at issue arose, and in several years refunds were due to petitioner and Mr. Allivato. The SO informed petitioner that the refunds from the joint returns had been applied to Mr. Allivato's separate trust fund recovery penalty liability for 1999 and therefore were not available to be applied

---

[2]On their 2007 joint return, a year in which petitioner was not employed, petitioner and Mr. Allivato claimed $45,180 in gross income while simultaneously claiming a mortgage interest deduction of $45,986.

to petitioner's separate trust fund recovery penalty liability
for 2002.

In November 2009 the IRS requested that petitioner complete
an OIC and a Form 433-A with both her and Mr. Allivato's
information and provide some bank statements by December 7, 2009.
Petitioner attempted to make an oral offer to compromise her tax
liability but failed to submit a written OIC or the requested
financial information.  Petitioner requested that the SO include
a statement in a followup letter to petitioner that the IRS would
not consider the OIC without her spouse's financial information.
The SO sent such a letter on December 3, 2009.  On December 15,
2009, the IRS issued a supplemental notice of determination
sustaining the levy.

## Discussion

We have jurisdiction under section 6330(d)(1) to review
respondent's determination that the notice of intent to levy was
proper and that respondent may proceed to collect by levy.[3]
In reviewing the Commissioner's decision to sustain collection
actions, where the validity of the underlying tax liability is
properly at issue, the Court reviews the Commissioner's
determination of the underlying tax liability de novo.  Sego v.

---

[3]The Pension Protection Act of 2006, Pub. L. 109-280, sec.
855, 120 Stat. 1019, amended sec. 6330(d) and granted this Court
jurisdiction over all sec. 6330 determinations made after Oct.
16, 2006.  Perkins v. Commissioner, 129 T.C. 58, 63 n.7 (2007).

Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews any other administrative determination regarding proposed collection actions for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182. An abuse of discretion occurs when the exercise of discretion is without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 308 (2005), affd. 469 F.3d 27 (1st Cir. 2006). Under section 6330, the Court reviews the position taken by the Commissioner in the last supplemental notice of determination. Kelby v. Commissioner, 130 T.C. 79 (2008). The taxpayer has the burden of proving that the Commissioner's determination to sustain a proposed collection action is an abuse of discretion. Rule 142(a).

At the collection hearing, a taxpayer may raise any relevant issues relating to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of the collection actions, and offers of collection alternatives. Sec. 6330(c)(2)(A). In addition, she may challenge the existence or amount of the underlying tax liability, but only if she did not receive a notice of deficiency or otherwise have an opportunity to dispute such liability. Sec. 6330(c)(2)(B).

Trust Fund Recovery Penalty

Section 6672 imposes a penalty for the willful failure to collect, account for, and pay over income and employment taxes of

employees.  Trust fund recovery penalties are assessed and collected in the same manner as tax against a person including "an officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform" the duties referred to in section 6672. Sec. 6671(b).  Such persons are referred to as "responsible persons" and the term may be broadly applied.  Mason v. Commissioner, 132 T.C. 301, 321 (2009).  A trust fund recovery penalty may be assessed against any responsible person and is separate from the employer's responsibility for the unpaid income and employment taxes.  Sec. 6672(a); Mason v. Commissioner, supra at 321.

Section 6672(b)(1) provides that no penalty may be imposed unless the Secretary notifies the taxpayer in person or in writing by mail to the taxpayer's last known address that the taxpayer shall be subject to assessment for such penalty.  Actual receipt of the notice is not required in order to prove that the Commissioner provided the required preliminary notice.  While petitioner did not receive the notice, there is no dispute as to its validity or that it was sent to petitioner's last known address.  See Hickey v. Commissioner, T.C. Memo. 2009-2.  If a notice is not received and the taxpayer has not otherwise had an opportunity to dispute the liability, the taxpayer may dispute the existence or amount of the underlying liability.  See sec.

6330(c)(2)(B). Petitioner has conceded that she owes the trust fund recovery penalty but asserts that she is unable to pay the full amount.

Offer-in-Compromise

The Secretary may compromise any civil or criminal case arising under the internal revenue laws. Sec. 7122(a); Murphy v. Commissioner, supra at 308. Section 7122(d) provides that the Secretary "shall prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." Taxpayers who wish to propose an OIC must submit a Form 656. See Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005). The regulations issued pursuant to section 7122(d) set forth three grounds for an OIC: (1) Doubt as to collectibility, (2) doubt as to liability, and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioner asserts that her financial situation would indicate doubt as to collectibility.

Doubt as to collectibility exists in any case in which the taxpayer's assets and income are less than the full amount of the liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. A determination of doubt as to collectibility includes a determination of the taxpayer's ability to pay the liability, taking into account the taxpayer's basic living expenses. Sec.

301.7122-1(c)(2), Proced. & Admin. Regs. An OIC based on doubt as to collectibility generally is acceptable only if the offer reflects the taxpayer's reasonable collection potential; i.e., the amount the Commissioner could collect through administrative and judicial collection proceedings. Murphy v. Commissioner, supra at 309 (citing Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517). Thus an OIC would include disclosure of the taxpayer's assets and income in order for the IRS to determine the taxpayer's reasonable collection potential. Id.

Petitioner argues that she is not required to submit Mr. Allivato's financial information upon submission of an OIC. Petitioner asserts that even though California is a community property State, she and Mr. Allivato had a valid transmutation agreement creating separate interests in property for each spouse.

In general, property interests are determined by State law. United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985); Aquilino v. United States, 363 U.S. 509, 513 (1960). Under California community property law, each spouse has a one-half ownership interest in the community estate, including income earned by both spouses during their marriage. Cal. Fam. Code sec. 2550 (West 2004). Therefore, without an agreement to the contrary, petitioner is entitled to one-half of the salary and assets accumulated by her and Mr. Allivato during their

marriage, which the IRS could levy upon to satisfy her separate liability.

In California, married individuals can change the character of property owned by either or by both spouses by a written transmutation agreement. Cal. Fam. Code sec. 850 (West 2004). California courts have given effect to some oral agreements made before January 1, 1985.[4]

Financial Information of Nonliable Spouse

We need not decide whether there was a valid transmutation agreement. Assuming there was, respondent is nevertheless entitled to require petitioner to provide financial information of her nonliable spouse. See Ranuio v. Commissioner, T.C. Memo. 2010-178; sec. 301.7122-1(c)(2)(ii), Proced. & Admin. Regs.

Where a taxpayer offers to compromise a liability for which the taxpayer's spouse has no liability, the Commissioner generally will not consider the nonliable spouse's assets and income in determining the amount of an acceptable OIC. Sec. 301.7122-1(c)(2)(ii)(A), Proced. & Admin. Regs. However, a

---

[4]Respondent points out that in such cases, California courts have looked to objective evidence which shows the intent of the parties, such as surrounding circumstances, the parties' actions, and their dealings with property. See Jafeman v. Jafeman, 105 Cal. Rptr. 483, 490 (Cal. Ct. App. 1972). The parties provided in a joint exhibit a deed search showing that petitioner jointly owned property in Arizona with Mr. Allivato in 1989 after the alleged oral agreement and before their relocation to California.

nonliable spouse's assets and income may be considered to investigate whether: (1) Property has been transferred from the taxpayer to the nonliable spouse under circumstances that would allow the Commissioner to collect the liability from the property, e.g., property conveyed in fraud of creditors; (2) property has been transferred from the taxpayer to the nonliable spouse for the purpose of removing the property from consideration by the Commissioner in evaluating the taxpayer's OIC; or (3) collection of the taxpayer's liability from the assets and income of the nonliable spouse is permitted under applicable State law, e.g., State community property law (this subsection would not apply if petitioner entered into a valid transmutation agreement). Sec. 301.7122-1(c)(2)(ii), Proced. & Admin. Regs.

The Commissioner may also request information regarding the assets and income of a nonliable spouse for the purpose of verifying the amount of and responsibility for expenses claimed by the taxpayer. Sec. 301.7122-1(c)(2)(ii)(A), Proced. & Admin. Regs. Petitioner provided a Form 433-A in March 2009 which claimed, among other things, that her unemployment income exceeded her costs and those costs included health insurance for both her and Mr. Allivato. When petitioner's unemployment compensation ended, the IRS requested Mr. Allivato's financial information in order to verify the amount of and responsibility

for expenses petitioner claimed.  Petitioner did not provide substantiation of how her expenses were being paid.  She asserted that her living expenses were funded by gifts from Mr. Allivato. Although multiple requests for financial information and substantiation, Form 433-A, and an OIC were made, petitioner provided limited financial information, piecemeal over the course of the year after the remand.  Petitioner failed to submit an OIC after the remand.

When a hearing officer is unable or refuses to consider collection alternatives because of a taxpayer's failure to provide financial information, courts have held that there was no abuse of discretion.  Schwersensky v. Commissioner, T.C. Memo. 2006-178; see also Lance v. Commissioner, T.C. Memo. 2009-129. Taxpayers who wish to propose an OIC must submit a Form 656.  See Godwin v. Commissioner, T.C. Memo. 2003-289.  We are satisfied that it was not unreasonable for the SO to require financial information for the nonliable husband under the facts and circumstances of this case.  Therefore, we hold that the SO's actions in sustaining the levy were appropriate and not an abuse of discretion.

Interest Abatement

In her trial memorandum petitioner asserts that she is entitled to interest abatement as a result of delays caused by respondent.  As previously indicated, the Court granted a joint

motion to remand this case to respondent's Office of Appeals in December 2008.  During 2009 there was a face-to-face meeting as well as many communications between petitioner and the SO.  In November 2009 the SO provided a December 7, 2009, deadline to petitioner for the submission of an OIC.  When no written OIC was submitted, the supplemental notice of determination was issued on December 15, 2009.[5]

The supplemental determination did not consider the issue of interest abatement.  The record reflects that any request for interest abatement was submitted after the SO closed the case and while the December 15, 2009, supplemental determination was being processed.  We have held that while we may review an Appeals officer's determination regarding interest abatement if a taxpayer requests an abatement of interest in a section 6330 hearing, we will not consider same if it was not raised in the section 6330 hearing or considered in the notice of determination.  Giamelli v. Commissioner, 129 T.C. 107 (2007); Katz v. Commissioner, 115 T.C. 329, 340-341 (2000); MacDonald v. Commissioner, T.C. Memo. 2009-63.

_____

[5]Apparently petitioner sent to respondent a letter requesting an abatement of interest on Dec. 14, 2009.  On Dec. 18, 2009, respondent sent a letter to petitioner advising that the issue of interest abatement had not been raised during the CDP hearing.

We are satisfied that respondent reasonably set a deadline for submission of an OIC. Petitioner failed to timely submit a written OIC and failed to raise the issue of interest abatement at the CDP hearing. Thus, the notice of determination properly did not consider that issue. Accordingly, we hold that this Court does not have jurisdiction to consider petitioner's request for abatement of interest. See <u>Giamelli v. Commissioner</u>, <u>supra</u>.

<u>Conclusion</u>

We conclude that there was no abuse of discretion in sustaining the levy because petitioner did not submit an OIC or the required documents. Additionally, we have no jurisdiction over the claim for interest abatement.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.