# United States Tax Court

T.C. Memo. 2022-96

WILLIAM GODDARD,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

LEE, GODDARD, & DUFFY, LLP,
Petitioner
v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 22334-17L, 23743-18L.          Filed September 19, 2022.

————

R assessed in 2014 pre-AJCA I.R.C. § 6707 penalties against Ps—LGD, a law firm, and G, its former partner— for failing to register tax shelters offered to clients in 1999 and 2000. Before the AJCA, I.R.C. § 6707 incentivized persons to register certain tax shelters or face penalties.

After receiving Notice of Proposed Adjustment (NOPA) letter packages and notice and demand letters related to the penalties, G unsuccessfully availed himself of the opportunity to dispute the underlying liabilities. LGD did not pursue that opportunity. Later, G received a Notice of Federal Tax Lien Filing whereas LGD received a Notice of Intent to Levy. Both sought CDP hearings.

During their respective CDP hearings, Ps first attempted to address their underlying liabilities, but the SOs refused because Ps already had received an opportunity through their NOPA letter packages and

**[*2]** notice and demand letters to challenge those liabilities, and G had extensively participated in conferences with the IRS Office of Appeals. The SOs sustained the lien filing and the proposed levy. Ps now seek review pursuant to I.R.C. §§ 6320(c) and 6330(d)(1). Ps assert that we can address their underlying liabilities and that the SOs violated I.R.C. § 6330(c)(1) by failing to verify *all* the requirements of applicable laws and administrative procedures had been met. Ps raised the following issues in their timely Petitions related to this verification claim: (1) supervisory approval under I.R.C. § 6751(b)(1); (2) expiration of the period of limitations; and (3) statutory repeal of pre-AJCA I.R.C. § 6707 penalties.

1. *Held*: Ps had received a prior opportunity to dispute the underlying liabilities, denying this Court jurisdiction to review their underlying liabilities for the pre-AJCA I.R.C. § 6707 penalty assessments.

2. *Held, further*, R established that the written supervisory approval requirement under I.R.C. § 6751(b) was satisfied.

3. *Held, further*, raising the issue as to whether the period of limitations expired constitutes an impermissible challenge to the underlying liabilities.

4. *Held, further*, raising the issue of whether the pre-AJCA I.R.C. § 6707 penalty was repealed constitutes an impermissible challenge to the underlying liabilities.

———————

*Steven R. Mather*, for petitioners.

*Heather K. McCluskey* and *Emerald Smith*, for respondent.

[*3]     MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, *Judge*:  Petitioners, William Goddard and the law firm Lee, Goddard, & Duffy, LLP (LGD),[1] are before the Court contesting the Internal Revenue Service's (IRS's) determinations in their respective collection due process (CDP) hearings.[2]

When petitioners filed their respective petitions, Mr. Goddard resided in California, and LGD's principal place of business was California.  They ask the Court to preliminarily address four issues involving section 6707 penalties imposed for tax years that predate the American Jobs Creation Act (AJCA), Pub. L. No. 108-357, 118 Stat. 1418.  Those penalties were imposed against them for tax years 1999 and 2000.  Throughout this Opinion, we refer to the earlier version of section 6707 as the "pre-AJCA section 6707" as that was the version in effect during the years at issue.  *Compare* Deficit Reduction Act of 1984, Pub. L. No. 98-369, § 141(b), 98 Stat. 494, 680 (codified as amended at 26 U.S.C. § 6707) (pre-AJCA section penalty), *with* AJCA §§ 811(a), 816(a), 118 Stat. at 1575, 1583 (codified as amended at 26 U.S.C. §§ 6707 and 6707A).

As to petitioners and the tax years at issue, petitioners asked the Court to decide:

(1) whether the settlement officers (SO) erred by refusing to consider petitioners' underlying liabilities;

(2) whether written supervisory approval under section 6751 was obtained before the IRS assessed pre-AJCA section 6707 penalties against petitioners;

(3) whether the assessments of the pre-AJCA section 6707 penalties were barred by the three-year period of limitations for returns under

---

[1] LGD's name was changed to LG Associates, LLP, before the trial in these cases.

[2] We bifurcated the trial in these cases to decide the below-mentioned four enumerated issues that would dispose of these cases had we held in favor of petitioners. The remaining CDP verification issues, collection alternatives, laches defense, and section 6330(c)(3)(C) issue will be addressed in a separate proceeding.  Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] section 6501 or the five-year period of limitations under 28 U.S.C. § 2462; and

(4) whether the AJCA retroactively repealed the pre-AJCA section 6707 penalties.

FINDINGS OF FACT

The parties stipulated some facts, which are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. These consolidated cases involve the IRS Office of Appeals' (Appeals)[3] sustaining determinations to proceed with collection actions on pre-AJCA section 6707 penalty assessments in the amounts set forth below:[4]

|  | Tax Year 1999 | Tax Year 2000 |
|---|---|---|
| Mr. Goddard | $4,053,679 | $764,240 |
| LGD | 4,202,348 | 792,268 |

The IRS assessed pre-AJCA section 6707 penalties against LGD, a partnership and law firm, and its partner Mr. Goddard for failure to timely register tax shelters, as required under pre-AJCA section 6111. The IRS determined that petitioners were involved in developing, marketing, and directing the operation of Short Option Strategies (SOS) and Custom Adjustable Rate Debt Strategy (CARDS) transactions.

I. *Early History*

Mr. Goddard earned an undergraduate degree from the University of California, Los Angeles, in 1981 and a law degree from Hastings Law School in 1984. Afterwards, he worked at an accounting

[3] In 2019 Congress changed the name of the IRS Office of Appeals to the IRS Independent Office of Appeals by passing the Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We use the name in effect at the time relevant to these cases, i.e., the Office of Appeals or Appeals.

[4] These amounts reflect those reported in the Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for petitioner Mr. Goddard; and the Final Notice-Notice of Intent to Levy and Notice of Your Rights to a Hearing for petitioner LGD. However, respondent conceded at trial and on brief that petitioners' tax year 1999 penalties with respect to the SOS transactions, as described in petitioners' respective Notice of Proposed Adjustments dated May 19, 2014, should be reduced by $2,200,709, as amounts paid by others.

[*5] firm, Arthur Anderson & Co.  He went on to work at Baker McKenzie, then Voss, Cook & Thel, LLP, until about 1997.

Mr. Goddard worked with Raymond Lee at Voss, Cook & Thel, LLP when they decided to open their own firm focusing on tax, real estate, and corporate law.  They opened that firm in or about 1996 or 1997.  In or around 1998 Tony Duffy and Bradley Patterson joined the firm as the litigation arm, and they changed the name to LGD.  In or around 2001 or 2002, Mr. Duffy left LGD.  In or around 2002 or 2003 LGD ceased the practice of law and began winding down.  However, LGD remained in existence because of a pending summons enforcement action.  In or around 2002 or 2003 and while LGD was winding down, Mr. Lee and Mr. Goddard formed Lee & Goddard, LLP, which they dissolved after Mr. Lee left to work at a competing law firm in April 2004.

Mr. Lee believed he was no longer a partner in LGD after April 2004; however, he never formally withdrew from the entity or surrendered his membership interests.  Upon ending his association with Mr. Goddard by moving to the competing law firm, Mr. Lee received no further reports from LGD such as a Schedule K–1, Partner's Share of Income, Deductions, Credits, etc., of Form 1065, U.S. Return of Partnership Income.

Next in 2004, Mr. Goddard formed Goddard, LLP, but the name changed to LGI, LLP in 2005.  Mr. Patterson was a partner running the litigation practice at LGI, LLP.  He was also an equity partner at LGD and represented LGD and Mr. Goddard in their defense of the summons enforcement action.

In 2004 the IRS began investigating LGD and Mr. Goddard for promoter penalties under pre-AJCA sections 6707 and 6708 after investigating KPMG and receiving documents that indicated LGD and Mr. Goddard had promoted and facilitated the potentially abusive tax shelters, which KPMG had developed and marketed.  The documentation that the IRS received linked investors to petitioners, as a person and an entity, involved in preparing those tax shelters.  The IRS concluded that petitioners had worked with KPMG to promote SOS tax shelters first offered for sale in 1999 and CARDS tax shelters first offered for sale in 2000.  In or around 2005 or 2006 the IRS issued summonses to LGD and Mr. Goddard, respectively, to determine their

[*6] level of involvement in the potentially abusive SOS and CARDS tax shelters.[5]

While not the initial defense attorney, Mr. Patterson took the lead role in the summons enforcement matters involving LGD, its clients, and Mr. Goddard. Mr. Patterson advised Mr. Goddard to resign from LGD as a litigation strategy because Mr. Goddard had moved to Portugal with his family; and by resigning, he would no longer be required to appear in California for repeated depositions. On October 4, 2007, Mr. Goddard executed a letter resigning from LGD. Consequently, Mr. Lee and Mr. Patterson were the only partners remaining in LGD as of October 2007, and the firm was no longer practicing law.

Despite the resignation letter, Mr. Goddard was still involved with the firm. He maintained possession of LGD's files and signed LGD's tax returns, including the last return, which was filed for tax year 2008 reflecting no income or expenses. Mr. Goddard also assisted Mr. Patterson and defense counsel with pending litigation involving LGD's clients and the summons enforcement matters because he had custody of the documents from the tax shelter era. Mr. Goddard assisted by responding to litigation discovery requests and ghost-writing most of the filings.

From 2014 through 2016 LGD, Mr. Goddard, and Mr. Patterson shared a suite and office address on Von Karman Avenue in Irvine, California (Von Karman office). However, neither Mr. Patterson nor Mr. Goddard regularly worked from that office. Mr. Patterson lived in San Diego and primarily worked from home, only going to the Von Karman office when necessary. Because Mr. Patterson's law practice required him to be out of the country for several months a year, his staff at the Von Karman office accepted mail, then scanned and emailed it to the appropriate addressee.

---

[5] In April 2006 the Department of Justice filed a petition to enforce IRS summonses against LGD and Mr. Goddard in the U.S. District Court for the Central District of California. By order in November 2007, the district court granted the government's petition to enforce each summons. *United States v. Lee, Goddard, & Duffy, LLP*, No. SACA06-408DOC (RNBX), 2006 WL 2404137, at *5 (C.D. Cal. June 29, 2006). LGD and Goddard appealed the order in January 2008, but the order was affirmed by the U.S. Court of Appeals for the Ninth Circuit in June 2011. *See United States v. Lee, Goddard & Duffy LLP*, 427 F. App'x 594 (9th Cir. 2011). In February 2012 the district court case was dismissed by the parties' stipulation. *Id.*

[*7] II.    *IRS Administrative Investigation to Assert Penalties*

After completion of the summons enforcement action, IRS Revenue Agent Jeff Boice (RA Boice) developed a pre-AJCA section 6707 penalty case against Mr. Goddard and LGD.

In separate letters dated May 19, 2014, RA Boice notified Mr. Goddard and LGD that the IRS was pursuing pre-AJCA section 6707 penalties against them.  The letters each included Form 5701, Notice of Proposed Adjustment; Form 886–A, Explanation of Items; and a penalty computation (collectively, NOPA letter package).  RA Boice and his immediate supervisor, Bisamber Misir, signed the NOPA letter packages.

The NOPA letter package for each petitioner was addressed to the Von Karman office address and notified petitioners of their respective postassessment appeal rights:

> If you do not agree to the IRC § 6707 penalties, you can request a post-assessment conference with the IRS Appeals Office.  To do so, forward a written protest in duplicate before the designated response date, and mail it to the revenue agent indicated above.  In your written protest you may provide an explanation of reasonable cause, if any.  Also see Publication 5, *Your Appeal Rights and How to Prepare a Protest if You Don't Agree.*

The Forms 886–A sent to petitioners make several assertions concerning petitioners' involvement in copromoting the SOS and CARDS transactions.  These forms indicated that LGD, KPMG, and Deustche Bank copromoted two transactions: (1) SOS, organized and sold in 1999 through 2002; and (2) CARDS, organized and sold in 2000 and 2001.  The Forms 886–A also stated that David Greenberg, a partner in the Los Angeles office of KPMG, developed, marketed, and directed the SOS and CARDS transactions whereas Deustche Bank held and executed trades in binary currency options that were integral to those transactions.  Furthermore, the Forms 886–A indicated that Mr. Goddard, as partner of LGD, assisted in implementing the alleged shelters.  The IRS's position was that to shield the identity of the client investing in the KPMG shelters, Mr. Greenberg urged prospective clients to retain Mr. Goddard as their attorney, who would then retain Mr. Greenberg and KPMG to assist in rendering legal services to the client.

**[*8]**     The IRS determined that KPMG, as the principal organizer under Temporary Treasury Regulation § 301.6111-1T, failed to register the tax shelters; and because Mr. Goddard and LGD assisted in the implementation of the SOS and CARDS transactions, they were also required to register those alleged tax shelters under pre-AJCA section 6111, but they did not.  Pre-AJCA section 6707 penalties were thus proposed against Mr. Goddard and LGD.

When the IRS issued Mr. Goddard's NOPA letter package on May 19, 2014, it was directly addressed to Mr. Goddard with a copy to Mr. Patterson, both of which were sent to the Von Karman office address. For LGD, the NOPA letter package was addressed to LGD and Mr. Goddard at the Von Karman office address because it was the partnership's last known address pursuant to its 2008 Form 1065. LGD's NOPA letter package was addressed as follows:

> Lee, Goddard & Duffy, LLP
> William A. Goddard, General Partner
> 18101 Von Karman Ave., Ste. 330
> Irvine, CA 92612

Both NOPA letter packages included a June 18, 2014, deadline to request a postassessment conference with Appeals.

While LGD failed to respond to the NOPA, Mr. Goddard did respond.  Mr. Patterson was Mr. Goddard's representative under a power of attorney and represented him before the IRS in the postassessment conference.  Because the Form 886–A referred to more than 50 exhibits, Mr. Patterson requested copies of those exhibits.  He received them in July 2014.

Mr. Patterson requested several extensions from the original June 18, 2014, deadline to submit a protest requesting a postassessment conference on behalf of Mr. Goddard.  RA Boice extended the deadline three times: (1) August 14, 2014; (2) September 15, 2014; and (3) September 26, 2014.[6]  Throughout the communications with RA

---

[6] Throughout 2014 Mr. Patterson and RA Boice exchanged numerous pieces of correspondence and voice messages.  Mr. Patterson kept requesting certain documents to no avail—legal service agreements, copies of checks, and client documents on which the IRS relied to assess the pre-AJCA section 6707 penalties.  After several requests for those additional records, Mr. Patterson sent RA Boice in mid-September two letters asking again for those records to verify computations set forth in the tables attached

[*9] Boice, Mr. Patterson also requested additional information and documents, including legal service agreements, copies of checks, and client documents, which he believed the IRS's Examination Division (Exam) relied upon in arriving at the computations forming the basis of the pre-AJCA section 6707 penalties ultimately assessed against Mr. Goddard. RA Boice provided some of the requested documents, but not the legal service agreements, copies of checks, or client documents.

On September 24, 2014, RA Boice wrote Mr. Patterson notifying him that the IRS had already provided him with all the information available and that Mr. Goddard's requests were better suited for a protest. RA Boice then denied the request for a fourth deadline extension with respect to the protest.

By letter dated September 29, 2014, Mr. Patterson requested a meeting with RA Boice's supervisor or, in the alternative, asked the IRS to consider that letter to be a protest. Although the letter was late, the Commissioner accepted it as a protest.

On September 29, 2014, RA Boice's supervisor, Mr. Misir, drafted a memorandum recommendation to assess penalties under pre-AJCA section 6707 as to Mr. Goddard, which three IRS personnel signed by November 2014: Barbara Harris, "Large Business and International (LB&I) Financial Services, Director of Field Operation (DFO) in New York;" Jack Ferguson, "Territory Manager;" and Lavena Williams, "LB&I DFO, Southeast."

Also on September 29, 2014, because LGD did not timely respond to the NOPA letter package by filing a protest, RA Boice's supervisor, Mr. Misir, drafted a memorandum recommending assessment of LGD's pre-AJCA 6707 penalties. By November 2014 the three IRS personnel who had signed Mr. Goddard's penalty recommendation letter signed LGD's closing package.[7]

On November 25, 2014, RA Boice sent Mr. Goddard a rebuttal to his protest stating that the transactions were tax shelters under pre-

---

to the NOPA letter package. In one of those letters, dated September 22, 2014, he requested another extension and indicated that he believed the then-current deadline to submit a protest to be September 29, 2014, rather than the actual deadline of September 26, 2014.

[7] The record reflects that LGD received its NOPA package. It was addressed to the same office where Mr. Goddard received his NOPA package and where Mr. Patterson worked, the Von Karman office.

**[\*10]** AJCA section 6111 and Temporary Treasury Regulation § 301.6111-1T and that Mr. Goddard organized and managed the SOS and CARDS transactions sold to multiple individuals between 1999 and 2002. The rebuttal concluded that because Mr. Goddard failed to register those shelters under pre-AJCA section 6111, he was liable for penalties under pre-AJCA section 6707. The penalties were assessed as to both Mr. Goddard and LGD on December 29, 2014.

Also on December 29, 2014, Mr. Patterson replied to the rebuttal reiterating that he wanted to meet with RA Boice's supervisor and that he assumed the IRS refused to honor that right by sending the rebuttal.

On December 31, 2014, RA Boice sent Mr. Goddard a notice and demand letter for the pre-AJCA section 6707 penalties for tax years 1999 and 2000. A copy was forwarded to Mr. Patterson. The notice and demand letters included the following statement:

> If you believe you have reasonable cause why this penalty should not be imposed, or if you otherwise believe you are not liable for this penalty, you may request consideration by our Appeals Office. To request consideration by Appeals, send us an explanation within 30 days of the date of this notice specifying why you believe you have reasonable cause, or why you otherwise believe you are not liable for the penalty. Any documents supporting your position should be sent with the explanation. Send the explanation and supporting documents to the address on the voucher.

The letters also included a calculation of the pre-AJCA section 6707 penalties for tax years 1999 and 2000. The notice and demand letters were delivered to Mr. Goddard and Mr. Patterson at the Von Karman office address.

Also on December 31, 2014, RA Boice sent LGD a notice and demand letter for the pre-AJCA section 6707 penalties for tax years 1999 and 2000. The letter provided LGD with an opportunity to request consideration by Appeals within 30 days of the notice date, which included the same statement quoted in Mr. Goddard's notice and demand. The letter also included a computation of the penalties for each respective tax year. The letter was delivered to the Von Karman office address on January 2, 2015. LGD submitted no request for Appeals consideration.

[*11]  On February 26, 2015, Mr. Goddard was notified that the Laguna Niguel Appeals Office had received his case.  Mr. Goddard's postassessment case was assigned to Appeals Officer David Bollenberg (AO Bollenberg).  Also on February 26, 2015, LGD's case was forwarded to Appeals despite LGD's neither requesting a postassessment Appeal nor filing a protest.  AO Bollenberg did not consider LGD's case in his capacity as an Appeals officer.  He only reviewed the file to see whether there was anything he needed for Mr. Goddard's appeal.

Mr. Patterson sent AO Bollenberg a letter, dated March 11, 2015, requesting Mr. Goddard's case be returned to the IRS Exam.  This request was denied because AO Bollenberg found no mistakes by Exam or any indication that Exam did not include everything they had.  Mr. Patterson's letter did not mention LGD.

AO Bollenberg spoke to Mr. Patterson several times regarding Mr. Goddard's case.  He held a telephone and a face-to-face conference with Mr. Patterson on June 3 and July 29, 2015, respectively.

At the face-to-face conference Mr. Patterson raised several issues from the IRS's examination focusing on two denied requests: (1) the additional information, which he believed to be necessary for computing the penalties; and (2) a meeting with RA Boice or his supervisor.  AO Bollenberg communicated that Exam did not have additional information.  He explained that no basis existed for sending the case back to Exam, but he agreed that the government may not have had adequate support for its computations.  AO Bollenberg also acknowledged problems with the Exam file because he could not obtain the evidence Mr. Goddard was seeking.  He determined that Exam had already given Mr. Patterson what it had and advised Mr. Patterson to let Appeals reach a solution with him, as Exam did not have settlement authority.  Mr. Patterson agreed and indicated that he would provide AO Bollenberg with a list of the information currently in his possession to show that the evidence did not support the penalty computation.

Mr. Patterson also requested a reduction for amounts already paid by KPMG and Deutsche Bank.  AO Bollenberg agreed that a reduction was likely appropriate.  At the end of the conference AO Bollenberg stated that older cases, like Mr. Goddard's, are likely to settle as the memories of the individuals involved fade, which made such cases difficult for the IRS to pursue.  He also mentioned that he had settled a previous case that was 15 years old for 50% of the amount asserted by the IRS.  In sum, AO Bollenberg was inclined to settle the case on the

[*12] information before him and agreed that Mr. Goddard made very reasonable requests for information and documentation necessary to evaluate the merits of the penalty under the law, which was missing from Exam's file.

By letter dated October 27, 2015, about three months after the last Appeals conference, Mr. Patterson asked AO Bollenberg for additional information and included a schedule of documents he contended were necessary to analyze and defend the penalties. Mr. Patterson's requests were substantially identical to those in his letters sent to RA Boice during the examination.

On November 16, 2015, AO Bollenberg submitted an Appeals Transmittal and Case Memo for LGD because no protest had been filed and the penalties had already been assessed. He had merely used LGD's file for background information for Mr. Goddard's protest. His Appeals Team Manager approved the memo. No closing letter was sent to LGD.

In response to Mr. Patterson's requests for documents pertaining to the penalties proposed against Mr. Goddard, AO Bollenberg sent Mr. Patterson a letter on January 14, 2016, notifying him that all relevant information and documentation in Exam's possession had already been provided to him and that Mr. Goddard had until February 5, 2016, to submit a settlement offer. At that point it was clear to AO Bollenberg that further investigation would not generate additional information. Mr. Patterson never made a settlement offer to AO Bollenberg.

By letter dated February 15, 2016, Mr. Patterson told AO Bollenberg that, because he had been working overseas, he just received the January 14, 2016, letter and requested an extension to February 26, 2016, to reply. On February 25, 2016, Mr. Patterson wrote a letter to AO Bollenberg requesting additional information he believed was needed for Mr. Goddard to make a settlement offer. Mr. Patterson also informed AO Bollenberg that he would be making a Freedom of Information Act (FOIA) request if the documents requested were not produced. AO Bollenberg did not respond to Mr. Patterson's untimely February 2016 letters.

In March 2016 AO Bollenberg detailed his findings, drafted a closing letter, and prepared an Appeals Transmittal and a Case Memorandum because he could do nothing more with the case after Mr. Goddard failed to make a settlement offer. In his memorandum dated March 25, 2016, AO Bollenberg made clear his conclusion that the

[*13] pre-AJCA section 6707 penalties were adequately supported and that Mr. Goddard did not have a meaningful basis for disputing the assessment. AO Bollenberg sustained the pre-AJCA section 6707 penalties in full for tax years 1999 and 2000. AO Bollenberg then closed the case after working on it for more than a year—from March 5, 2015, to March 25, 2016.

The signed closing letter was never mailed to Mr. Goddard or Mr. Patterson. However, Mr. Patterson received the closing letter from AO Bollenberg by email.

Thereafter, Mr. Goddard made a FOIA request to the IRS, but he did not receive the legal service agreements, copies of checks, or client documents he sought to challenge the IRS's penalty computations; however, the unsigned and undated closing letter was produced.

III.    *Collection Proceedings*

A.    *Initiation of Mr. Goddard's CDP Hearing*

To collect the pre-AJCA section 6707 penalties assessed but not paid, the Commissioner mailed Mr. Goddard Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated February 14, 2017. Mr. Goddard timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request), on February 21, 2017, which respondent received on February 22, 2017. In the submission Mr. Goddard checked the boxes on the form for lien "discharge" and "withdrawal," and gave as reasons for such actions that the lien was improperly filed and that he was not responsible for the penalties. He also named Mr. Patterson as his authorized representative.

On May 23, 2017, Settlement Officer JC Sellers (SO Sellers) was assigned to Mr. Goddard's CDP case. On June 13, 2017, SO Sellers sent Mr. Goddard and Mr. Patterson a letter indicating a conference was scheduled for July 19, 2017. On June 27, 2017, SO Sellers received a fax from Mr. Patterson requesting an in-person conference in late July or August and stating Mr. Goddard's intention to challenge the underlying liabilities because he was unable to dispute the liabilities before Appeals.

In another faxed letter dated June 27, 2017, which was received by SO Sellers on July 5, 2017, Mr. Patterson asked for an opportunity to challenge the underlying liabilities at an in-person conference with a

[*14] court reporter present to transcribe the proceeding. The letter explained that the FOIA request generated thousands of pages of additional relevant documentation and requested that a settlement officer evaluate the credibility of Mr. Goddard's oral testimony. In response on July 5, 2017, SO Sellers mailed a letter to Mr. Patterson and Mr. Goddard concluding that Mr. Goddard could not challenge the underlying liabilities because he already had a prior opportunity before Appeals to do so, making an in-person hearing unnecessary.

On July 17, 2017, SO Sellers received a fax from Mr. Patterson again requesting an in-person, face-to-face, transcribed hearing for Mr. Goddard's challenge to the underlying liabilities. Mr. Patterson maintained that Mr. Goddard never received a signed and dated closing letter from Appeals.

On the morning of July 19, 2017, when the original CDP hearing was scheduled, Mr. Goddard sent a fax to SO Sellers regarding issues to be considered at the hearing. At the scheduled time, Mr. Goddard called into the hearing, but Mr. Patterson did not. SO Sellers did not continue with the CDP hearing. Instead, he sent a letter to Mr. Goddard and Mr. Patterson reiterating that Mr. Goddard did not qualify for an in-person conference because he had had a prior opportunity to challenge the underlying liabilities, which precluded him from challenging them again. SO Sellers made clear that any documentation and evidence for consideration in Mr. Goddard's CDP case needed to be submitted by August 4, 2017, and that the hearing was tentatively rescheduled for August 23, 2017. On the evening of July 19, 2017, Mr. Patterson faxed a letter to SO Sellers explaining that he had previously requested a later hearing date in July or August because he was flying to New York during the scheduled conference, which explained his absence at the scheduled CDP hearing.

B.    *Initiation of LGD's CDP Hearing*

On July 21, 2017, the Commissioner mailed LGD Letter 1058, Final Notice – Notice of Intent to Levy and Notice of Your Rights to Hearing (levy notice), with respect to the pre-AJCA section 6707 penalties for tax years 1999 and 2000. Mr. Patterson, as a partner, timely submitted a CDP hearing request on behalf of LGD, which the IRS received on August 3, 2017. LGD did not check any boxes on the CDP hearing request indicating a reason for disagreeing with the proposed levy. Rather, LGD stated:

**[\*15]** IRS failed to follow procedure in issuing notice of intent to levy. Also taxpayer (LGD) is not liable for the penalty for the following reasons: IRS improperly aggregated investments, IRS miscalculated penalty, statute of limitations or laches precludes the assessment of the penalty, and/or any failure by LGD to register the transaction was due to reasonable cause.

LGD's case was assigned to Settlement Officer Teresita Paz (SO Paz) on August 10, 2017. SO Paz confirmed she had no prior involvement with LGD for the types of taxes and years associated with the CDP case. On October 5, 2017, SO Paz confirmed the following:

> [T]ax was assessed under IRC 6201; notice and demand issued within 60 days to the last known address under IRC 6303; there was a balance due when CDP notice [sic] issued under IRC 6322 and 6331(a); no pending BK, IA or OIC [bankruptcy, installment agreement or offer-in-compromise]; L1058 was sent cert mail to the TP's last known address; levy source was identified; CP 504 was issued on 2-19-2015, more than 30 days prior to CDP notice. It does not appear that the account is in business as there has been no current returns filed.

C.    *Mr. Goddard's CDP Hearing*

On September 6, 2017, Mr. Patterson and Mr. Goddard attended Mr. Goddard's CDP hearing with SO Sellers.[8] Mr. Patterson spent most of the hearing arguing that Mr. Goddard could contest the underlying liabilities because he did not receive a closing letter from Appeals. SO Sellers repeated that Mr. Goddard could not challenge the underlying liabilities, and he could only discuss the lien filing and whether proper procedures and law were followed. He also explained that (1) no information was provided which met the criteria for lien withdrawal under section 6323(j) or discharge under section 6325; (2) collection met all the procedures for filing the lien; and (3) he would recommend sustaining the collection action.

---

[8] A court reporter also appeared but was required to leave the conference despite Mr. Patterson's argument that a court reporter is not an 'audio recording' and should be allowed. SO Sellers cited Internal Revenue Manual (IRM) 8.6.1.5 (Oct. 1, 2016) and section 7521.

[*16] Mr. Goddard and Mr. Patterson received a Notice of Determination dated September 22, 2017, for tax years 1999 and 2000, reiterating what was communicated by SO Sellers during the CDP hearing. Specifically, the notice explains that despite not receiving a closing letter from Appeals, Mr. Goddard included in the documents he submitted to SO Sellers a copy of the closing letter, which stated that no basis for abatement of underlying penalties existed.

D.    *LGD's CDP Hearing*

In relation to LGD's CDP request, SO Paz sent a letter to Mr. Patterson for LGD and scheduled the CDP hearing on October 31, 2017. Mr. Patterson then provided a copy of the examination file to SO Paz before the hearing, which she reviewed to determine whether LGD was given the opportunity to appeal the penalties before they were assessed. By fax on October 27, 2017, Mr. Patterson requested an in-person conference explaining LGD's dispute as to the liability, and he submitted Form 656–L, Offer in Compromise (Doubt as to Liability).

SO Paz called Mr. Patterson to confirm receipt of documents and the scheduled October 31, 2017, conference. She also informed him that she had requested advice from her Appeals team manager as to next steps. SO Paz asked Mr. Patterson to send an offer-in-compromise to the proper IRS office, which Mr. Patterson did. He then sent a letter dated December 1, 2017, to SO Paz stating that the IRS did not comply with section 6751 because it notified the taxpayer of the pre-AJCA section 6707 penalties before receiving approval from the Territory Manager, Director; Field Operations, Director; and Field Operations, Financial Services Manhattan.

On March 8, 2018, LGD's CDP hearing request was suspended to consider the doubt as to liability offer-in-compromise. On April 11, 2018, the offer-in-compromise was rejected because the liability had been considered by Appeals, and the case was sent back to SO Paz.

On June 29, 2018, SO Paz agreed to have an audio recorded in-person CDP hearing on July 25, 2018, which occurred with Mr. Patterson as LGD's representative. Prior to that hearing, SO Paz had referred the case to AO Yu as to the underlying liabilities issue and so informed Mr. Patterson at the hearing; they also discussed the rejected offer-in-compromise.

On July 27, 2018, SO Paz received an email from Appeals Team Manager Marilyn Le, who was concerned that LGD would receive an

[*17] improper second appeal of the case. Despite this concern, on August 15, 2018, SO Paz referred the underlying liabilities determination to Appeals. Appeals closed the referral in October 2018 under instruction from an area team manager because the underlying liabilities had been previously considered and sustained on appeal in Mr. Goddard's case.

Because SO Paz was notified that the Appeals case was closed, on October 15, 2018, she attempted to contact Mr. Patterson by phone and left a message requesting a return phone call. On October 17, 2018, SO Paz was in contact with Manager Le and AO Bollenberg to determine whether she could consider the underlying liabilities.

Then on October 22, 2018, SO Paz was forwarded a letter sent to AO Bollenberg's area team manager from Mr. Patterson, dated September 26, 2018, which stated:

> [U]pon further consideration, and in an effort to expedite the process, we have made [the] following decisions:
>
> 1. Regarding the LLP: We are no longer interested in having you reconsider your decision with respect to the LLP. However, this should not be construed as a withdrawal of the CDP request. We are merely requesting that you proceed with the issuance of the CDP determination letter so that we may petition the Tax Court for review.

Considering this correspondence and because Mr. Patterson had not returned SO Paz's call, she moved forward with closing the case.

On November 7, 2018, SO Paz sent LGD a Notice of Determination sustaining the proposed levy action. The letter explained that in the CDP request, LGD challenged the underlying liabilities, so the case was referred by SO Paz to Appeals, but the referral was rejected because the underlying liabilities had been previously considered and sustained on an appeal for a related case. AO Paz sustained the proposed levy action because (1) LGD could not challenge the underlying liabilities; (2) LGD did not request a collection alternative; (3) LGD's offer-in-compromise under doubt as to liability was denied; (4) Mr. Patterson's September 26, 2018, letter requested issuance of a determination letter so LGD could petition this Court; and (5) Mr. Patterson failed to return SO Paz's October 15, 2018, phone call to discuss the case.

**[\*18]** In sustaining the proposed levy against LGD, SO Paz confirmed that she had no prior involvement with LGD's tax determination at issue and she had consulted IRS records that showed that (1) the notice and demand was properly issued before the levy notice; (2) a proper assessment was made for tax years 1999 and 2000; (3) a notice and demand was sent to LGD's last known address; (4) a balance was due when the levy notice was issued; and (5) LGD had not paid its liability in full upon notice and demand and subsequent notices. LGD timely petitioned this Court challenging the notice of determination.

## OPINION

We first decide whether petitioners had a prior opportunity to challenge the underlying liabilities which were subject to the lien filing and proposed levy collection actions. We then decide whether the SOs properly verified that the necessary written supervisory approvals under section 6751 were obtained *before* assessment of the pre-AJCA section 6707 penalties against petitioners. Finally, we decide whether the limitations period and statutory repeal issues petitioners raised are verification issues.[9]

We hold for respondent on all issues.

I. *Applicable Legal Principles*

A. *Jurisdiction and Standard of Review*

This Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). This Court is also without authority to enlarge upon the statutory grant. *Smith v. Commissioner*, 133 T.C. 424, 426–27 (2009). But we do have jurisdiction to determine whether we have jurisdiction. *Id.* Therefore, we have authority to determine whether this Court has jurisdiction to redetermine petitioners' liability for pre-AJCA section 6707 penalties.

This Court can have jurisdiction under sections 6320(c) and 6330(d)(1) to review the Commissioner's administrative determinations in lien and levy actions. *Gardner v. Commissioner*, 145 T.C. 161, 173 (2015), *aff'd*, 704 F. App'x 720 (9th Cir. 2017). Where the underlying tax

---

[9] The parties agree that, as to LGD and Mr. Goddard, the statutory repeal issue was not raised during their respective CDP hearings such that if it was not a verification issue, we would be barred from considering it. *See* § 6330(c)(1) and (2).

**[\*19]** liability is properly at issue, the Court will review the matter de novo. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the underlying liability is not properly at issue, the Court will review the administrative determination for abuse of discretion. *Id*. at 182. Abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. *Fargo v. Commissioner*, 447 F.3d 706, 709 (9th Cir. 2006), *aff'g* T.C. Memo. 2004-13; *Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Where a determination by Appeals is predicated upon an error of law, that determination constitutes an abuse of discretion. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010); *Swanson v. Commissioner*, 121 T.C. 111, 119 (2003).

B.    *CDP Principles*

Section 6321 provides that if any person liable to pay any tax neglects or refuses to pay the same after demand, the unpaid amount— any interest, addition to tax, or assessable penalty[10]—shall be a lien in favor of the United States. The Commissioner shall notify a taxpayer in writing when a notice of lien is filed under section 6323 and inform the taxpayer of the right to request any administrative hearing with Appeals. §§ 6320(a) and (b), 6330(b).

If a taxpayer fails to pay any federal tax liability after notice and demand under section 6303, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. However, the IRS must first issue a levy notice and notify the taxpayer of the right to an administrative hearing before Appeals at least 30 days before any levy is made. § 6330(a) and (b)(1).

After receiving a levy notice, the taxpayer may request an administrative hearing before Appeals. § 6330(a)(3)(B), (b)(1). A taxpayer receiving notice of filing a tax lien has hearing rights similar to the hearing rights accorded to a taxpayer receiving a levy notice. *See* § 6320(c). The provisions of section 6330(c), (d), and (e) also govern the conduct of a CDP hearing requested under section 6320, and CDP hearings held under sections 6320 and 6330 may be heard together.

---

[10] The pre-AJCA section 6707 penalties are assessable penalties falling under chapter 68, subchapter B, of the Internal Revenue Code, titled "Assessable Penalties." Collected in the same manner as taxes, taxpayers must pay assessable penalties "upon notice and demand by the Secretary." § 6671(a).

[*20] *Jordan v. Commissioner*, 134 T.C. 1, 5 (2010) (citing § 6320(c)); *Rosenthal v. Commissioner*, T.C. Memo. 2014-252, at *10.

When taxpayers make an abuse of discretion claim under section 6330(c), we consider and decide whether the IRS settlement officer: (1) properly verified that the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issues the taxpayers raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(3); *see Golditch v. Commissioner*, T.C. Memo. 2022-26, at *6; *Ludlam v. Commissioner*, T.C. Memo. 2019-21, at *9–10, *aff'd per curiam*, 810 F. App'x 845 (11th Cir. 2020).

## II. *CDP Issues Raised by Mr. Goddard and LGD*

We begin with Appeals' duty to consider the relevant liability issue raised by Mr. Goddard and LGD related to their CDP request. Resolution of this issue affects our analysis of the remaining issues petitioners have raised.

Mr. Goddard and LGD claim that the SOs—SO Sellers and SO Paz—should have considered their underlying liabilities for the pre-AJCA section 6707 penalties. Sections 6320(c) and 6330(c)(2)(B) allow taxpayers under certain circumstances to challenge their underlying liability in a CDP hearing. *Middleton v. Commissioner*, T.C. Memo. 2022-28, at *6–7; *Rosenthal*, T.C. Memo. 2014-252, at *10. A taxpayer may raise a CDP challenge to the underlying tax liability *only* if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." § 6330(c)(2)(B).

In determining whether the taxpayer had a prior opportunity to dispute his liability, the regulations distinguish between liabilities that are subject to deficiency procedures and those that are not. Where the assessments against the taxpayer are assessable penalties like pre-AJCA section 6707 penalties, the Commissioner issues no notice of deficiency because the deficiency procedures do not apply. *See* § 6212(a). Because this proceeding does not involve a statutory notice of deficiency, we focus on the second clause of section 6330(c)(2)(B): whether Mr. Goddard and LGD "otherwise ha[d] an opportunity to dispute such tax liability." Respondent argues that the NOPA letter packages and the

[*21] notice and demand letters provided Mr. Goddard and LGD with a prior opportunity to contest their underlying liabilities for pre-AJCA section 6707 penalties, and those notices precluded them from raising the underlying liabilities before this Court and at their CDP hearings. Because we agree that a conference with Appeals either before or after a penalty assessment provides a taxpayer a meaningful opportunity to dispute the underlying tax liability, we look more carefully at what transpired here. *See Lewis v. Commissioner*, 128 T.C. 48, 61 (2007); *Bletsas v. Commissioner*, T.C. Memo. 2018-128, at *8, *aff'd*, 784 F. App'x 835 (2d Cir. 2019); IRM 4.32.2.11.7.2 (June 8, 2012). We will address these issues separately for Mr. Goddard and LGD.

A. *Mr. Goddard*

Mr. Goddard contested his underlying liability for the pre-AJCA section 6707 penalties and had two conferences with Appeals. He argues that because he never received a closing letter from AO Bollenberg, he never had a meaningful opportunity to dispute assessment of the penalties.

He argues that his case is analogous to *Perkins v. Commissioner*, 129 T.C. 58 (2007). In *Perkins* the taxpayer had received a levy notice while his appeal was pending and before any Appeals conference occurred. *Id*. at 60–61. The taxpayer requested a CDP hearing based on the levy notice, and the settlement officer refused to allow the taxpayer an opportunity to dispute the underlying liability because of the prior Appeals conference request. *Id*. At the time the collection due process hearing was requested, no action had been taken by Appeals on the taxpayer's dispute, and because the settlement officer during the CDP hearing refused to allow the taxpayer an opportunity to dispute the underlying liability, we held that the settlement officer erred. *Id*. at 67. Mr. Goddard's facts are vastly different, and *Perkins* simply does not apply in this instance.

Unlike the Appeals officer in *Perkins*, AO Bollenberg worked on the file for over a year and allowed Mr. Goddard to contest the underlying liabilities. AO Bollenberg (1) reviewed the administrative file; (2) exchanged numerous pieces of correspondence with Mr. Goddard and his representative; and (3) conducted two conferences with Mr. Goddard and his representative discussing the merits of the case—once by telephone in June 2015 and once in a face-to-face meeting in July 2015. Mr. Goddard likewise received an unsigned copy of the closing letter in response to his FOIA request, which he received before

[*22] his request for the CDP hearing. Mr. Goddard cannot feign surprise that AO Bollenberg closed his appeal when the record shows: Mr. Goddard and Mr. Patterson missed the deadline that AO Bollenberg set to provide a settlement offer; Mr. Patterson received the closing letter from AO Bollenberg by email at the close of appeal; and Mr. Goddard produced the closing letter during his CDP hearing with SO Sellers.

We find Mr. Goddard's arguments unpersuasive and hold that he not only received an opportunity to dispute his underlying liability for the pre-AJCA section 6707 penalties but also availed himself of that opportunity.

B. *LGD*

LGD argues that its failure to request review of its underlying liabilities after receiving the NOPA letter package and the notice and demand letter was due to respondent's addressing the letter to the wrong person, although it nevertheless arrived at LGD's last known address. In *Bletsas* we evaluated a similar issue involving a taxpayer in a trust fund recovery penalty (TRFP) case who took no action in response to a Letter 1153 she received granting her appeal rights. *Bletsas*, T.C. Memo. 2018-128, at *6–15. We held that "[b]ecause [the taxpayer] had, but neglected to avail herself of, a prior opportunity to challenge her TFRP liability before the IRS Appeals Office, she was precluded from disputing that liability at the CDP hearing." *Id.* at *9 (first citing § 6330(c)(2)(B); then citing *Thompson v. Commissioner*, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472; and then citing Treas. Reg. § 301.6330-1(e)(3), Q&A-E2).

Here, LGD supports its argument by showing that the NOPA letter package, although addressed to LGD, also listed Mr. Goddard on the mailing label, which LGD argues proves that it never received the NOPA package. LGD also insists it only became aware of the pre-AJCA section 6707 penalties against it upon receipt of the levy notice in July 2017. These arguments lack credibility. First and foremost, LGD was on notice of the investigation related to the failure to register the SOS and CARDS tax shelters and maintain lists of investors as required by pre-AJCA sections 6111 and 6707 since at least 2006 when the summons enforcement action began. *See Lee, Goddard, & Duffy, LLP*, 2006 WL 2404137. Moreover, LGD appealed the adverse summons enforcement decision against it to the Ninth Circuit: *Lee Goddard & Duffy LLP*, 427 F. App'x 594. The assessment at issue in these cases was made a few

**[\*23]** years later in 2014. LGD was on notice that the government was pursuing penalties against it. Second, Mr. Goddard, despite resigning as a partner, had LGD's files pertaining to the tax shelters at issue. He was also integrally involved in the summons litigation (even ghost writing many of the pleadings), and he admitted at trial that "it's possible that I received [the NOPA letter package] . . . and then just thought it was a duplicate of what I'd already received that was addressed to me."

Third, each NOPA letter package with appeal rights was sent to LGD and Mr. Goddard at the correct address, the Von Karman office, as delivered on May 21, 2014. Fourth, United Parcel Service records show that the notice and demand explaining LGD's appeal rights was delivered to the Von Karman office on January 2, 2015; although its mailing label addressed it to LGD in care of LGI, the letter itself clearly relates only to LGD (not LGI). While no requirement under pre-AJCA section 6707 exists mandating that a notice follow specific mailing procedures, documentary evidence of mailing may suffice as proof that a notice was properly mailed to a taxpayer. *Mason v. Commissioner*, 132 T.C. 301, 318 (2009) (citing *Coleman v. Commissioner*, 94 T.C. 82, 90– 91 (1990)).

Respondent established that the NOPA letter package and the notice and demand letter were mailed to and received by LGD at the Von Karman office address.[11] The delivered letters themselves are clearly addressed to LGD and clearly relate to the LGD penalties and its right to appeal. Respondent, therefore, has shown that LGD had notice of its appeal rights.

LGD, like Mr. Goddard, had a prior opportunity to dispute its liabilities for the pre-AJCA section 6707 penalties when it received the NOPA letter package and notice and demand letter. Consequently, LGD was precluded from disputing the liabilities at the CDP hearing and is likewise precluded from doing so before this Court. *See* § 6330(c)(2)(B); *Thompson*, 103 T.C.M. (CCH) at 1472; Treas. Reg. § 301.6330-1(e)(3).

---

[11] At trial the IRS representative testified that the Exam team, rather than the IRS campus, issues notice and demand letters involving pre-AJCA section 6707 penalties because of the cost and time to reprogram computers to properly communicate the penalty to the taxpayer. We find his explanation sufficient to explain the United Parcel Service delivery receipt rather than a U.S. Postal Service record.

**[\*24]** We have no jurisdiction to review petitioners' underlying liabilities.

III.   *Section 6330(c)(1) Verification Issues*

Petitioners must also plead section 6330(c)(1) issues for this Court to review them.  Under section 6330(c)(1), "[t]he appeals officer shall at the [CDP] hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  We "review the Appeals officer's verification under section 6330(c)(1) without regard to whether the taxpayers raised it at the Appeals hearing" if the taxpayers adequately raised the issue in their petition filed in this Court.  *Hoyle v. Commissioner*, 131 T.C. 197, 202–03 (2008), *supplemented by* 136 T.C. 463 (2011); *see* Rule 331(b)(4).  But the taxpayers must put on a prima facie case and meet their burden of proof showing the Appeals officer failed to obtain the necessary verification from the Secretary under section 6330(c)(1).  *Dinino v. Commissioner*, T.C. Memo. 2009-284, 98 T.C.M (CCH) 559, 564; *see also* Rule 331(b)(4).

A.   *Whether Respondent Established That Proper Supervisory Approval for Penalties Had Been Obtained*

Compliance with section 6751 is an issue of "verification" under section 6330(c)(1), which may be raised in a CDP case before this Court.  *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 154 T.C. 68, 75 n.8 (2020), *rev'd and remanded on other grounds*, 29 F.4th 1066 (9th Cir. 2022).  Section 6751(b)(1) requires the initial determination of certain penalties to be "personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."

Section 6751 has a timing requirement for the supervisory approval.  According to the Ninth Circuit, "§ 6751(b)(1) requires written supervisory approval *before* the assessment of the penalty or, if earlier, *before* the relevant supervisor loses discretion whether to approve the penalty assessment."  *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074 (emphasis added).  With this holding, the Ninth Circuit reversed our decision in *Laidlaw's Harley Davidson*, 154 T.C. at 82–84, where we held that the supervisory approval for an assessable section 6707A penalty must be obtained before the first formal communication with the taxpayer.

[*25]  We follow the relevant precedent of the Court of Appeals to which an appeal would generally lie.  *See Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).  In these cases the appeal generally lies in the Ninth Circuit.  We, therefore, apply the Ninth Circuit's view as stated in *Laidlaw's Harley Davidson* and do not consider whether we agree with that view as opposed to our view stated in our Opinion in that case.

With respect to Mr. Goddard, respondent bears the initial burden of production under section 7491(c) and must provide sufficient evidence establishing that respondent's representatives complied with section 6751(b)(1).  *See Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001); *Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).  If respondent establishes compliance, the burden shifts to Mr. Goddard to provide contrary evidence.  *See Frost v. Commissioner*, 154 T.C. 23, 34–35 (2020).

But section 7491(c) does not apply to LGD because it is a partnership rather than an individual taxpayer.  *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 236–37 (2018).  Because respondent does not bear the burden of production regarding LGD, LGD has "the burden of proving that no penalty should apply" and may assert the supervisory approval issue as a defense to the penalties.  *Endeavor Partners Fund, LLC v. Commissioner*, T.C. Memo. 2018-96, at *64, *aff'd*, 943 F.3d 464 (D.C. Cir. 2019); see *Dynamo Holdings Ltd. P'ship*, 150 T.C. at 236–37.

The parties agree that the section 6751(b) penalty approval requirement applies to pre-AJCA section 6707 penalties.  They also agree that the first formal communication of the pre-AJCA section 6707 penalties was on May 19, 2014, when the NOPA letter packages were issued to Mr. Goddard and to LGD.  The NOPA letter packages stated that the pre-AJCA section 6707 penalties were to be assessed against Mr. Goddard and LGD.  The parties also agree that RA Boice's immediate supervisor, Mr. Misir, approved the pre-AJCA section 6707 penalties before the NOPA letter packages were mailed to Mr. Goddard and to LGD and before assessment.

Respondent argues that because the NOPA letter packages were signed by RA Boice's immediate supervisor, the section 6751(b) supervisory approval requirement is satisfied.  Mr. Goddard and LGD contend that respondent was required to obtain a threefold supervisory

**[\*26]** approval pursuant to the directions in the IRM:[12] "In LB&I, after Area Counsel reviews the investigation case, it is forwarded to the following officials for their review and approval: 1. Territory Manager 2. Director, Field Operations (DFO) 3. Director, Field Operations, Financial Services, Manhattan (LB&I:F:DFO:M)." IRM 4.32.2.11.1(4) (June 8, 2012.) They focus on the second clause in section 6751(b)(1): "or such higher level official as the Secretary may designate." Petitioners, therefore, contend that respondent failed to satisfy his burden because respondent obtained the threefold supervisory approval roughly six months *after* the NOPA packages were issued to petitioners.

Contrary to petitioners' arguments, respondent's representative obtained the necessary supervisory approval before assessing penalties. Section 6751(b) requires one of two types of supervisory approval: "the immediate supervisor of the individual making such determination *or* such higher level official as the Secretary may designate." (Emphasis added.) According to section 6751(b), respondent must only show he obtained supervisory approval from one of the two options—RA Boice's immediate supervisor, Mr. Misir who signed the NOPA letter packages issued to LGD and to Mr. Goddard, or a higher-level official designated by the Secretary.

Again, the immediate supervisor may approve assessable penalties if he or she has authority to do so and if the approval occurs before the penalties were assessed. *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th at 1074 (citing § 6751(b)(1)); *see PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 213 (5th Cir. 2018) ("The plain language of § 6751(b) mandates only that the approval of the penalty assessment be 'in writing' and by a manager (either the immediate supervisor or a higher level official)."); *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C. 75, 85 (2019) (citing *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d at 213). Because Mr. Misir's signature

---

[12] Section 6330(c)(1) specifically requires that the settlement officer at the CDP hearing shall obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Moreover, section 6330(c)(3) provides that the determination by the settlement officer shall take into consideration the verification presented under section 6330(c)(1). Because Mr. Goddard and LGD have questioned whether applicable IRM procedures were followed in making the penalty assessments at issue here, we have examined the IRM procedures. However, because we conclude that the settlement officer met the verification requirement of section 6330(c)(1), we need not and do not decide whether the procedures described in the IRM are administrative procedures that come within the verification requirement of section 6330(c)(1).

**[\*27]** on the NOPA letter packages satisfied the supervisory approval requirement before he lost his authority to approve the penalties and before the penalties were assessed, respondent satisfied his burdens. Furthermore, under Ninth Circuit precedent, all managers signed the penalty approval forms by November 2014, while they still had authority. That date is before the December 29, 2014, assessment date; consequently, respondent complied with the requirements of section 6751.

B.       *Whether Assessment of the Penalties Is Barred by the Period of Limitations*

During a CDP hearing, SOs must verify that a valid assessment was made. *Ron Lykins, Inc. v. Commissioner*, 133 T.C. 87, 97 (2009). The settlement officer may review the IRS's administrative file in connection with the liability and may rely on transcripts to identify the date and the amount of tax assessed. *See, e.g.*, *May v. Commissioner*, T.C. Memo. 2014-194, at \*11–12, *supplemented by* T.C. Memo. 2016-43, *aff'd sub nom. Best v. Commissioner*, 702 F. App'x 615 (9th Cir. 2017).

Respondent contends that "[d]etermining which period of limitations might apply to a penalty assessment is not the kind of requirement contemplated by the statute." We construe respondent's position as an assertion that limitations period defenses are not verification issues under section 6330. We agree because a bar of the period of limitations is an affirmative defense, and the party raising that defense must specifically plead it and prove it. Rules 39, 142(a). "Raising the issue of whether the limitations period has expired constitutes a challenge to the underlying tax liability." *Hoffman v. Commissioner*, 119 T.C. 140, 145 (2002) (first citing *Boyd v. Commissioner*, 117 T.C. 127 (2001); and then citing *MacElvain v. Commissioner*, T.C. Memo. 2000-320); *see Kindred v. Commissioner*, 454 F.3d 688, 699 (7th Cir. 2006) ("It is well settled law that a challenge to the IRS['s] ability to assess a tax under the statute of limitations codified at IRC § 6501 constitutes a 'challenge to the underlying tax liability.'"). Because petitioners cannot contest their underlying liabilities before this Court as explained *supra* pp. 20–24, the expiration of the limitations period is not properly before this Court.

Even assuming arguendo that petitioners' underlying liability challenge is properly before us, their challenge still fails. Petitioners argue that the pre-AJCA section 6707 penalties are barred by the three-

**[*28]** year period of limitations for returns under section 6501(a) or by the five-year catch all period of limitations under 28 U.S.C. § 2462.

We cannot read a period of limitations into the Code where there is none. A strong presumption exists against finding a period of limitations against the federal government when none is clearly applicable. *E.L. Dupont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 40 n.3 (1st Cir. 2001); *Capozzi v. United States*, 980 F.2d 872, 875 (2d Cir. 1992); *United States v. Tri-No Enters., Inc.*, 819 F.2d 154, 158 (7th Cir. 1987). A period of limitations generally "runs against the United States only when they assent and upon the conditions prescribed." *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930); *see Mullikin v. United States*, 952 F.2d 920, 926 (6th Cir. 1991). In analyzing the period of limitations applicable for tax assessments, the Supreme Court has emphasized the longstanding principle that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984) (quoting *E.L. Dupont De Nemours & Co.*, 264 U.S. at 462).

As to the three-year period of limitations for returns under section 6501(a), the parties agree that neither Mr. Goddard nor LGD filed a Form 8264, Application for Registration of a Tax Shelter. Under section 6501(c)(3), the IRS can make an assessment beyond the three-year period of limitations when nothing is filed. On its face, the section 6501(a) limitations claim fails.

Moreover, section 6501(a) provides that a tax must generally be assessed "within 3 years after the *return was filed*" or (if the tax is payable by stamp) within three years after the tax was paid. (Emphasis added.) Registration of a tax shelter bears no relationship to filing a tax return. The registration does not purport to be a return or even provide information sufficient to calculate a tax liability, and the penalties imposed by pre-AJCA section 6707 bear no relationship to filing a return. *See Beard v. Commissioner*, 82 T.C. 766, 777 (1984) (establishing a four-part test for what constitutes a return), *aff'd per curiam*, 793 F.2d 139 (6th Cir. 1986). Rather, penalties for failure to register tax shelters are imposed on persons who were required to do so but failed. Accordingly, return-based limitations in section 6501 impose no limitation on assessment of these types of penalties.

We have also previously held that the five-year period of limitations does not apply to assessable penalties such as those provided

**[*29]** under pre-AJCA section 6707. As explained in an analogous setting in *Crim v. Commissioner*, T.C. Memo. 2021-117, at \*16, \*18, Congress provided a postassessment limitations period for section 6700 assessable penalties:

> Section 6700 penalties for promoting abusive tax shelters bear no relationship to the filing of a tax return (by the promoter or anyone else). Rather, they are imposed by reason of the promoter's having engaged in one or more "activities" specified in section 6700(a)(1). . . .
>
> . . . .
>
> Moreover, 28 U.S.C. sec. 2462 by its terms applies "[e]xcept as otherwise provided by Act of Congress." In the case of actions to collect tax penalties, Congress has "otherwise provided"—namely in section 6502(a), which provides that an assessed tax "may be collected by levy or by a proceeding in court" within 10 years after the assessment. *See Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir. 1992) (citing section 6502(a) as a limitations period "otherwise provided" by Congress); *Mullikin*, 952 F.2d at 929 (same).

The U.S. Court of Appeals for the Second Circuit and the U.S. District Court for the Northern District of California agree with our determination in *Crim*. *Capozzi*, 980 F.2d at 874; *Armstrong v. United States*, No. 18-CV-06532-LHK, 2019 WL 2548139, at \*5 (N.D. Cal. June 20, 2019). In *Capozzi* the Second Circuit held that 28 U.S.C. § 2462 "applies only to 'action[s], suits[s] or proceeding[s].' These terms implicate some adversarial adjudication, be it administrative or judicial." *Capozzi*, 980 F.2d at 874. In contrast, an assessment of a penalty is an ex parte act that is "merely the determination of the amount of the penalty and the official recording of the liability." *Id.* (first citing § 6203; and then citing Treas. Reg. § 301.6203-1). "An assessment is not an enforcement of a penalty but merely the determination and recordation of an amount owed." *Id.* "Enforcement" of that amount occurs when the IRS proceeds to collection. *See* §§ 6203, 6320, 6330, 6502(a). Accordingly, "[i]t is the collection of amounts owed, not the assessment of them, that may be properly termed 'enforcement'." *Capozzi*, 980 F.2d at 875. The district court in *Armstrong* agreed with the Second Circuit and held that 28 U.S.C. § 2462 could not apply to pre-AJCA section 6707 penalties because such penalties are not an "action,

**[\*30]** suit, or proceeding" as required by 28 U.S.C. § 2462. *Armstrong*, 2019 WL 2548139, at \*5. Because assessment of the pre-AJCA section 6707 penalties is not an "action, suit, or proceeding," we also determine that 28 U.S.C. § 2462 cannot apply to the pre-AJCA section 6707 penalties.

Overall, petitioners' period of limitations arguments fail.

C.      *Whether the AJCA Retroactively Repealed the Pre-AJCA Section 6707 Penalty*

Petitioners request that we address whether the passage of the AJCA repealed the pre-AJCA section 6707 penalty. Respondent counters that the AJCA amended but did not repeal section 6707, such that the Court must apply the law as in effect during the tax years at issue (i.e., 1999 and 2000). Furthermore, respondent argues that Mr. Goddard and LGD did not raise this issue in their CDP hearings and are precluded from doing so here.

We start with an inquiry as to whether a challenge involving the repeal of a statute is tantamount to a challenge to the underlying liability or a verification issue. In other words, we must determine whether such an inquiry is beyond the scope of the verification requirements under sections 6320(c) and 6330(c)(1). Again, as set forth specifically in section 6330(c)(1), "[t]he appeals officer shall at the [CDP] hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." We have *consistently* applied a simple approach to this verification requirement:

> Caselaw applying section 6330(c)(1) has not imposed a substantive review of the procedural steps that have been verified by the settlement officer or of the settlement officer's thought process. Rather the settlement officer's review of the administrative steps taken before assessment of the underlying liabilities has been accepted as adequate to the requirements of section 6330 if there is supporting documentation in the administrative record.

*Blackburn v. Commissioner*, 150 T.C. 218, 222 (2018); *see also Craig v. Commissioner*, 119 T.C. 252, 261–62 (2002). We have also held that reliance on standard administrative records is acceptable to verify assessments. *See Blackburn*, 150 T.C. at 224 (first citing *Nestor v.*

**[\*31]** *Commissioner*, 118 T.C. 162, 166 (2002); and then citing *Davis v. Commissioner*, 115 T.C. 35, 41 (2000)).

Much like a challenge to the period of limitations discussed *supra* pp. 27–30, having a settlement officer comb through legislative history to verify whether a law, that was clearly applicable during the years at issue, was retroactively repealed is well beyond the ordinary scope of verification. Such a requirement is a substantive inquiry that would add a level of detail to the verification process that has never previously been required. The statutory repeal claim is instead a challenge of the underlying liabilities, which we cannot review for the reasons discussed *supra* pp. 20–24.

Assuming arguendo that petitioners' underlying liability challenge is properly before us, their claim still fails. The plain text of the AJCA directly contradicts petitioner's argument that the AJCA retroactively repeals the pre-AJCA section 6707 penalty. When the statute is clear, as here, we look no further than the statute to determine the meaning. *See Sullivan v. Stroop*, 496 U.S. 478, 482 (1990); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Because we look to legislative history only if the statute is unclear, we have no need to look any further than the statute at play in these cases. *Blum v. Stenson*, 465 U.S. 886, 896 (1984); *United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995).

The AJCA specifically states: "Section 6707 . . . is amended"; whereas in another unrelated section of the AJCA, it states: "Part V of subchapter M of chapter 1 . . . is hereby repealed." AJCA §§ 816(a), 835(a), 118 Stat. at 1583, 1593. The amendments to pre-AJCA section 6707 applied to transactions listed in pre-AJCA section 6111 and offered after the AJCA's effective date: "The amendments made by [the AJCA] shall apply to returns the due date for which is after the date of the enactment of this Act," which was October 22, 2004. AJCA § 816, 118 Stat. at 1583–84. Consequently, the plain text of the statute demonstrates Congress' intent to *amend* pre-AJCA section 6707 for returns due after October 22, 2004—the AJCA's effective date.

Because Congress knows how to repeal a statute in such a way as "to erase it from the books," it could have done so here. *See Helvering v. Newport Co.*, 291 U.S. 485, 489–90 (1934). Pre-AJCA section 6707 imposed penalties on certain persons for failure to register a tax shelter first sold after 1984 whereas post-AJCA section 6707 imposes penalties on certain persons who fail to make a return reporting certain

[*32] transactions after October 22, 2004. *Compare* Deficit Reduction Act § 141(b) (the pre-AJCA section 6707 penalty), *with* AJCA §§ 815(c), 816(c), 118 Stat. at 1583–84 (the post-AJCA section 6707). Nothing in the AJCA or the House committee report indicates that Congress intended to alter or eliminate the effective date of the pre-AJCA section 6707 penalties.[13] Rather, they show that the AJCA did in fact amend the pre-AJCA section 6707 penalties and that the effective date text in the AJCA prescribed the AJCA's limited reach. Accordingly, petitioners' appeal to the legislative history to support a retroactive repeal of pre-AJCA section 6707 penalty is unconvincing. *See, e.g.*, *Patten v. United States*, 116 F.3d 1029, 1036 n.5 (4th Cir. 1997) (noting that legislative history provides little guidance when determining the meaning of a statute with clear text). Based on the plain text of the AJCA, Congress intended to amend section 6707 by tying the penalty to returns due after October 22, 2004, rather than to repeal the prior version for periods before the effective date.

IV.    *Conclusion*

We conducted this bifurcated trial to decide four issues related to the filing of a tax lien and a proposed levy sustained against petitioners in CDP hearings requests related to the assessment of pre-AJCA section 6707 penalties. We hold for respondent on all four issues.

We will hold additional proceedings to consider Mr. Goddard's and LGD's remaining issues raised in their Petitions, namely additional verification issues, the laches defense, the rejection of LGD's offer-in-compromise, and whether the SOs balanced the need for collection actions with the legitimate concern that those actions be no more intrusive than necessary.

To implement the foregoing, and concessions of respondent,

*An appropriate order will be issued.*

---

[13] The word "repeal" is not synonymous with "make retroactive." Repeal, Retroactive, Black's Law Dictionary (11th ed. 2019) (defining a retroactive law as "[a] legislative act that looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect," and a "repeal" as "[a]brogation of an existing law by express legislative act; RESCIND").